FILED
U.S. DIST. COURT
MIDDLE DIST. OF L/

2006 AUG 30 PM 4: 20

SIGN.
BY DEPUTY CLERK

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **WALTER W. ALLEN, CLEVELAND LEWIS, SADIE LEWIS, AND KIM FOWLER** | **CIVIL ACTION NO.** |
| | 06-638-RET-CN |
| **VERSUS** | **JUDGE** |
| **ROLLINS ENVIRONMENTAL SERVICES OF LA., INC.; MICHAEL A. SULLIVAN; JOHN C. ARBUTHNOT; CLEAN HARBORS (PLAQUEMINE), L.L.C.; CLEAN HARBORS, INC.; CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.; CYRIL HINDS; GERALD I. HEBERT; AND STEADFAST INSURANCE COMPANY** | **MAGISTRATE JUDGE** |

## NOTICE OF REMOVAL

Steadfast Insurance Company ("Steadfast") files this Notice of Removal of a civil action filed by plaintiffs Walter W. Allen, Cleveland Lewis, Sadie Lewis, and Kim Fowler. Based on the following facts, this action is removable pursuant to 28 U.S.C. § 1441, § 1446, and § 1453.

1.      On or about April 4, 1996, plaintiffs Walter W. Allen, Sadie Lewis, and Cleveland Lewis, on behalf of themselves and all other persons similarly situated, filed suit against Rollins Environmental Services of La., Inc. ("Rollins") in the 18th Judicial District Court, Parish of Iberville, State of Louisiana, bearing Docket No. 47,254, Division "A", captioned *Walter W. Allen, Cleveland Lewis and Sadie Lewis v. Rollins Environmental Services of La., Inc.* Plaintiffs, individually and on behalf of a putative class, asserted claims for property

RET
JJB
JP, Removal

damage against Rollins as the operator of a hazardous waste injection well located in Bayou Sorrel, Louisiana. Plaintiffs filed a First Amending Petition on or about June 19, 1996.

2.    On or about May 25, 2005, plaintiffs filed their Second Supplemental and Amending Petition adding claims against the following additional defendants: Michael A. Sullivan; John C. Arbuthnot; Clean Harbors (Plaquemine), L.L.C.; Clean Harbors, Inc.; Clean Harbors Environmental Services, Inc.; Cyril Hinds; Gerald I. Hebert; and Steadfast Insurance Company. Plaintiffs seek to recover property damage based primarily on the alleged migration beneath the surface of the ground of materials injected into the hazardous waste injection well. A Third Supplemental and Amending Petition, adding Kim Fowler as an additional plaintiff and putative class representative, and setting forth other allegations, followed on or about March 7, 2006. (The original Petition for Damages through the Third Supplemental and Amending Petition are included in Exhibit A, and the complete state court record comprises Exhibit C.)

3.    This Court has subject matter jurisdiction over all claims asserted against all defendants pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, § 1441, and § 1453. CAFA applies to this matter because this action is a purported class action in which the amount in controversy exceeds Five Million ($5,000,000.00) Dollars, exclusive of interest and costs, the putative class contains at least one hundred (100) class members, and at least one plaintiff is a citizen of a state different from a defendant.

4.    This action was "commenced" within the meaning of CAFA after the February 18, 2005 effective date of CAFA based on the May 25, 2005 filing of the Second Supplemental and Amending Petition adding claims against multiple new defendants. *See, e.g., Braud v. Transport Service Company of Illinois*, 445 F.3d 801 (5th Cir. 2006).

5.     The Petition, as amended, alleges a class action pursuant to La. C.C.P. art. 591, *et seq.*, and plaintiffs have filed a corresponding Motion to Certify Class Action. (The motion is included in Exhibit A.) No class has been certified.

6.     Pursuant to 28 U.S.C. § 1332(d)(2)(A), a member of the putative class of plaintiffs is a citizen of a State different from any defendant (now and at the time the action became removable) in that the named plaintiffs are citizens of the State of Louisiana and at least one defendant is a citizen of a State other than Louisiana, including but not limited to defendant Clean Harbors Environmental Services Inc., which is a Massachusetts corporation with its principal place of business in Massachusetts.

7.     Pursuant to 28 U.S.C. § 1332(d)(5), the putative class consists of at least one hundred (100) members, as plaintiffs seek to establish a class of all present owners of real properties that are located in Iberville Parish, Louisiana and within ten (10) miles of the Bayou Sorrel injection well site. (*See* Exhibit A)

8.     The amount in controversy, based on the contents of Exhibit B (specifically pages 3 to 4 addressing this litigation), exceeds the sum or value of $5,000,000.00, exclusive of interest and costs.

9.     Furthermore, the conditions set forth in 28 U.S.C. § 1332(d)(3) or § 1332(d)(4) that would require the Court to decline jurisdiction are not met, and plaintiffs cannot bear their burden of proving otherwise. *See, Frazier v. Pioneer Americas LLC*, 455 F.3d 542 (5th Cir. 2006).

10.     This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) in that it is filed within thirty days of receipt of Exhibit B, a July 31, 2006 letter from plaintiffs' counsel to Steadfast's counsel that operates as an "other paper" within the meaning of 28 U.S.C. § 1446(b),

setting forth for the first time that the amount in controversy in this action exceeds $5,000,000.00, exclusive of interest and costs and that the action is removable.

11.     A class action removed pursuant to 28 U.S.C. § 1332(d) does not require consent of all defendants. *See,* 28 U.S.C. § 1453.

12.     This Honorable Court is the district and division embracing the place where the state court action is pending, namely the 18th Judicial District Court, Parish of Iberville, State of Louisiana.

13.     Pursuant to 28 U.S.C. § 1446(d), Steadfast will file with the Clerk of the 18th Judicial District Court, Parish of Iberville, State of Louisiana, and will serve on counsel for plaintiffs, a Notice of Filing of Removal.  Steadfast will also file with the Clerk of the Louisiana First Circuit Court of Appeal a Notice of Filing of Removal based on the pendency of a writ application filed by defendant Clean Harbors, Inc. in connection with the district court's denial of its Exception of Lack of Personal Jurisdiction, bearing Docket No. 2006-CW-1600.

14.     This Notice of Removal is accompanied by a copy of the entire state district court suit record, including all process, pleadings, and orders served upon Steadfast.  (Exhibit C)

15.     Accordingly, Steadfast asks that this federal court take jurisdiction of this action to the exclusion of any further proceedings in the state court in accordance with federal law.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:  _____

Marshall M. Redmon , Bar Roll No. 18398
J. Alan Harrell, Bar Roll No. 25081
Holly G. Hansen, Bar Roll No. 26902
Suite 701 • City Plaza
445 North Boulevard
Baton Rouge, Louisiana 70802

Telephone: (225) 346-0285
Telecopier: (225) 381-9197

**ATTORNEYS FOR STEADFAST INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Notice of Removal and Notices of Filing of Removal filed with the 18th Judicial Court and Louisiana First Circuit Court of Appeal have been served on:

Kenneth H. Hooks, III
Richard J. Dodson
Dodson & Hooks, A P.L.C.
One Maritime Center
17405 Perkins Road
Baton Rouge, LA 70810

Eric E. Jarrell
Michael D. Roche
Rebecca Dietz
King, LeBlanc & Bland
201 St. Charles Avenue, Suite 3800
New Orleans, LA 70170

Whitton E. Norris, III
Davis, Malm & D'Agostine, P.C.
One Boston Place
Boston, Massachusetts 02108

F. Barry Marionneaux
F. Charles Marionneaux
Marionneaux & Marionneaux
23615 Railroad Avenue
Plaquemine, LA 70764

William L. Downing
10988 N. Harrell's Ferry Road, Suite 10
Baton Rouge, LA 70816

Cyril Hinds
820 Heart D. Farm Road
Youngsville, LA 70592

by facsimile and/or First Class, United States Mail, properly addressed and postage prepaid, this 30th day of August, 2006.

_____
J. Alan Harrell

**WALTER W. ALLEN, CLEVELAND LEWIS AND SADIE LEWIS**

**VERSUS**

**ROLLINS ENVIRONMENTAL SERVICES OF LA., INC.**

FILED: _____    _____

                                                              **DEPUTY CLERK**

## PETITION FOR DAMAGES

Plaintiffs petition this Honorable Court for a judgment finding defendant herein liable for damages and restoration costs associated with Defendant's deep well injection of hazardous wastes and related activities that substantially harmed plaintiffs' land and legal interests therein by allowing the migration of hazardous, toxic or harmful substances, or both, on or adjacent to plaintiffs' land, by improper and unauthorized disposal of hazardous, toxic and/or harmful substances beneath plaintiffs' land, and by leaks or spills, or both, from defendant's injection and other equipment and facilities located on or near plaintiffs' land.  Plaintiffs bring this action on behalf of themselves and all other person similarly situated.  Plaintiffs respectfully aver that:

1.

This is a class action on behalf of named plaintiffs, individually and on behalf of all Louisiana residents who own properties or reside on or use properties contaminated by defendant hazardous waste injection disposal activities within the class area located in Iberville Parish, Louisiana, near the town of Bayou Sorrell, Louisiana.  This class is also on behalf of the plaintiffs who own properties or reside in the vicinity of said pollution.

2.

Plaintiffs are:

(1)    Walter W. Allen, a Louisiana resident and/or person of full age and majority who owns a 2 1/2 acre tract of land in Township 10 South,  Range 11 East, Section 28 approximately 1500' from defendant's hazardous waste injection well.

EXHIBIT
A

(2)     Sadie Lewis, a Louisiana resident of full age and maajority who resides on property in Township 10 South, Range 11 East, Section 28, Iberville Parish, Louisiana, near defendant's injection well location.

(3)     Cleveland Lewis, a Louisiana resident of full age and maajority who resides on property in Township 10 South, Range 11 East, Section 28, Iberville Parish, Louisiana, near defendant's injection well location.  Plaintiff's properties has been damaged by various defendant's disposal of toxic and hazardous wastes injected beneath or adjacent to  plaintiffs properties without landowner consent.

3.

Defendant is:

(1)     Rollins Environmental Services of Louisiana., Inc., a Delaware corporation with its principal place of business in Louisiana,

Defendant conducted, directed, and profited from the hazardous substances injection activities, more fully described herein as operator of the injection wells and other facilities, causing the pollution and related property damage attributable to its wells and facilities located on or near plaintiffs' properties.

Defendant directed and conducted the construction and operation of injection well facilities and related equipment which have damaged the environment, including plaintiffs' lands by contaminating it with hazardous and toxic substances.

4.

These materials are toxic and hazardous wastes under Louisiana and Federal law.

5.

Defendant knew these wastes they injected are highly toxic substances.

6.

Defendant knew that their day to day operations of these injection wells resulted in the migrational contamination and disposal, or both, of these chemicals beneath or in close proximity to plaintiffs' lands and underground water sources. Defendant chose to inject these wastes as a routine practice, promoting and allowing the spreading and migration of this toxic waste plume beneath plaintiffs' properties.

7.

Despite possessing such knowledge, Defendant continued its practice of disposing of said wastes on or near plaintiffs' properties, and at no time issued a warning to the public, including the plaintiffs, that the disposal discharge was migrating beneath plaintiffs' properties or that there was any hazard to persons or properties.

8.

Accordingly, as a direct and proximate result of the defendant's injections of the aforementioned toxic wastes, the class of plaintiffs have suffered damage to their real properties and interests therein.

9.

Plaintiffs seek recovery of stigma damages for the diminution in value of their interests in polluted properties or properties located in close proximity to defendant's pollution, which will continue even after complete restoration cleanup, for recovery of damages sufficient to restore the properties to their precontaminated condition, for unjust enrichment damages for defendant's unauthorized use of their properties as a toxic waste disposal site without plaintiffs' consent, for recovery of the cost to fully assess as yet unidentified pollution on plaintiffs' properties, for recovery of punitive damages for defendant's willful and wanton disregard for public safety and the environment in their transportation, handling and storage of these toxic and hazardous substances, and reasonable attorney fees.

10.

Plaintiffs and all members of the class have suffered irreparable harm and damage as a result of defendant's unlawful and wrongful conduct, and seek a mandatory and prohibitory injunction to prevent further migration of this toxic pollution.

11.

This class includes two subclasses: (1) all present owners of real properties which properties are located in Iberville Parish, Louisiana, and within a ten-mile radius of defendant's injection well site. (hereinafter referred to as Class Area 1).

12.

The individual members of the entire class and subclass are so numerous as to make joinder thereof impracticable.

13.

As to each subclass, the claims asserted arise from common questions of law and fact, to-wit:

a. Defendant's toxic pollution of the land in the Class Area;

b. Diminution of real and leasehold properties value among property owners and residents in the class area;

c. Defendant's knowledge of toxic discharges and pollution of the eco-system;

d. Defendant's concealment of such pollution and failure to warn;

e. The reasonable value of expenses of litigation, including attorney fees, as well as punitive damages recoverable by the class members as a group.

14.

Further, because of the presence of these common questions of law and fact, a class action is the most efficient means of resolving this controversy both for the parties and the judicial system.

15.

These common questions of law and fact which exist as to the class and subclass members predominate over any questions solely affecting individual members of the class.

16.

The claims of the plaintiffs are typical of those of the class and subclass in that plaintiffs' claims arise from the same course of conduct by defendant which gives rise to the claims of other class members and the claims are based upon the same legal theories.

17.

The plaintiffs herein will fairly and adequately protect the interests of the class members and have retained counsel competent and experienced in class actions and complex litigation.

18.

Class action regarding this litigation is superior to any other method available for the fair and efficient adjudication of this controversy. The burden and expense of individual toxic tort litigation is so great as to make it impracticable for any class members individually to seek redress.

19.

Individual litigation of all claims which might be asserted by all class members would produce such a multiplicity of cases that the judicial system having jurisdiction of the claims would remain congested for years. Class treatment by contrast, provides manageable judicial treatment calculated to bring to a rapid conclusion litigation of claims arising out of Defendant's conduct.

20.

The interest of any class member who seeks individual prosecution of his or her claim is adequately protected by the opt-out procedures under Louisiana law.

21.

It is therefore in the best interest of all parties and in the best interest of judicial economy to certify this matter as a class action.

22.

Any language herein to the contrary notwithstanding, plaintiffs' asserted causes of action are based solely and exclusively upon the laws of the State of Louisiana. This petition is absolutely devoid of a claim for relief or damages pursuant to federal statutory or judicial authority.

23.

Defendant knew for many years that it was disposing, storing, discharging and other wise releasing toxic poisons and pollutants into the ground, beneath or adjacent to plaintiffs' properties in the class area, and intentionally continued to conduct these activities it knew full well were causing pollution damage and environmental despoliation to the properties of class members.

24.

Defendant was willfully and wantonly negligent in disregarding public safety while operating its Bayou Sorrel injection well, in its transportation, discharge storage, and disposal of the toxic and hazardous oil field wastes beneath or adjacent to plaintiffs' properties having known, or should have known, that these toxins would wreak damage to property and the environment.

25.

Without question, it was reasonably foreseeable that Plaintiffs and other persons similarly situated would be adversely effected and harmed by Defendant's operation of its facility and by its transportation, discharge, storage, and disposal of their toxic and hazardous wastes beneath or adjacent to Plaintiffs' lands, and that as a direct and proximate result of its negligence Plaintiffs would sustain property damage.

26.

Defendant was willfully and wantonly negligent in failing to warn Plaintiffs, and those similarly situated, of the presence of toxic substances beneath or adjacent to plaintiffs' properties in the class area.

27.

Defendant are strictly liable to Plaintiffs and those similarly situated under La. C.C. Art. 667, for storing, discharging and disposing toxic and hazardous substances via its injection wells onto, beneath or adjacent to plaintiffs' properties.

28.

The actions of the Defendant herein, in the capacity alleged above, in the operation of their injection well at Bayou Sorrell and the associated discharge, storage, and disposal of toxic substances beneath or adjacent to Plaintiffs' properties within the class area constitutes a continuing and damaging nuisance to plaintiffs and their properties interests.

29.

Defendant storage, discharge, and disposal of bioaccumulative and non-biodegradable toxic substances onto Plaintiffs' lands constitutes an ongoing and

continuous trespass, as defendant is without legal authority or right to do so.

30.

Plaintiffs are homeowners, properties owners and residents whose full use and enjoyment of their homes and properties has been, and will continue to be, directly and adversely effected by Defendant' discharge, storage, and disposal of toxic, chemical pollutants thereon or in close proximity thereto

31.

Plaintiffs have sustained damages, including, but not limited to, diminished properties values, loss of quiet use and enjoyment of their properties, and other economic, personal and aesthetic damages.

32.

As a direct and proximate result of the negligent acts and omissions of Defendant, Plaintiffs have suffered considerable damages and injuries foreseeable to Defendant, specifically:

    a.     Toxic pollution of the lands, waters and properties of each Plaintiff;

    b.     Destruction of the value of Plaintiffs' lands, rendering their lands unmerchantable and without substantial fair market value;

    c.     Exposure of the Plaintiffs' lands, water, and properties to toxic chemical pollution, and the health hazards created thereby;

    d.     Annoyance, discomfort and inconvenience occasioned by Defendant's created nuisance, including loss of full use and enjoyment of each of Plaintiffs' properties.

33.

Accordingly, Defendant is liable to Plaintiffs under La. C.C. Art. 2315 because Defendant knew or should have known that their operation of their facilities and their transportation, storage, handling and disposal of toxic substances would cause damage to plaintiffs' properties, and owed a duty to protect Plaintiffs from said harm, yet failed to take action necessary to prevent the ensuing damages.

34.

Defendant's actions, particularly its knowingly disposing of toxic and hazardous materials onto Plaintiffs' properties, allowing their effluence from off-site, and failing to warn plaintiffs of the attendant dangers, constitutes 'wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances " and therefore makes it liable to plaintiffs for punitive damages pursuant to La. C.C. Art. 2315.3.

35.

Defendant's pollution of Plaintiffs' properties by injection of hazardous and toxic substances has damaged Plaintiffs by creating potential liability attaching to Plaintiffs for this pollution and thereby potentially causing Plaintiffs to incur costs to identify and abate the damage and nuisance attributable to Defendant's acts.

36.

Plaintiffs are entitled to recover monetary damages equal in sum to the cost of conducting an expedited, comprehensive environmental assessment of all yet unidentified pollution, so as to clear title to their land, undo the stigma attached to their lands created by Defendant's negligent despoliation thereof, and undertake a thorough assessment of the harm inflicted to date so that properties can ultimately be restored to an uncontaminated, unpolluted state.

37.

Defendant has a legal duty to restore Plaintiffs' properties to its condition prior to the harm caused by Defendant and to reimburse the Plaintiffs for all response costs incurred due to Defendant's tortious conduct.

38.

The injection wells and related facilities, equipment or works owned or operated by Defendant on or near Plaintiffs' properties that have damaged Plaintiffs are things under the custody of Defendant within the meaning of La. C.C. 2317 and Defendant are thus strictly liable for these damages.

39.

Plaintiffs are entitled to be compensated with funds sufficient to:

a. Conduct a complete scientific analysis of the nature and magnitude of the latent contamination of their properties attributable to Defendant's operations of waste pits, injection wells, and any other hazardous waste disposal implements;

b. restore their properties to an uncontaminated state;

c. exemplary damages; and

d. unjust enrichment damages for defendant's unauthorized use of Plaintiffs' lands to store and dispose of its hazardous substances without prior consent or compensation to Plaintiffs from the time of trespassatory ingress up to final removal of these polluants.

WHEREFORE, Plaintiffs pray on their behalf individually, and behalf of all others similarly situated that the Defendant be cited to appear and answer this Petition and, that after due proceedings be had, that there be judgement entered herein as follows:

1. That an order be entered herein certifying this action and maintaining this action as a class action;

2. That the plaintiff and class members herein be awarded compensatory damages in an amount to be proven at trial, including payment of the costs to restore the land bearing identified pollution to its original, uncontaminated state, unjust enrichment damages for the unauthorized disposal of hazardous wastes on plaintiffs'; properties without their consent, and other property damages;

3. That plaintiffs be awarded punitive damages;

4. That Defendant pays Plaintiffs funds sufficient for conducting an expedited and comprehensive environmental assessment of plaintiffs' lands to identify all latent pollution thereon or thereunder;

5. For all costs of this suit and for accrued legal interest on any amount awarded from the date of the judicial demand until paid, including reasonable attorney's fees;

6. Injunction of further migration of toxic and hazardous substances beneath Plaintiffs' lands; and to abate the nuisance.

7.   For all just and equitable relief.

BY ATTORNEYS:

TALBOT, CARMOUCHE, MARCHAND,
& MARCELLO
214 W. CORNERVIEW
POST OFFICE BOX 759
GONZALES, LOUISIANA 70707-0759
TELEPHONE: (504) 644-7777

BY: _____
VICTOR L. MARCELLO
BAR ROLL NO. 9252

PLEASE SERVE

ROLLINS ENVIRONMENTAL SERVICES OF LA, INC.
Through their agent for service of process
United States Corporation Co.
203 Carondelet, Suite 811
New Orleans, LA 70130

FILED

**18TH JUDICIAL DISTRICT COURT FOR THE PARISH OF IBERVILLE**

**STATE OF LOUISIANA**

**DIVISION " D "   DOCKET NO. 47,254**

**WALTER W. ALLEN, CLEVELAND LEWIS AND SADIE LEWIS**

**VERSUS**

**ROLLINS ENVIRONMENTAL SERVICES OF LA., INC.**

FILED: _____   _____

                                                      DEPUTY CLERK

**FIRST AMENDING PETITION**

NOW INTO COURT COME PLAINTIFFS WALTER W. ALLEN, CLEVELAND LEWIS AND SADIE LEWIS, to amend their original petition as follows:

1.

By amending paragraph 4 to read as follows:

"4.

These materials are toxic and hazardous wastes under Louisiana law."

2.

By amending paragraph 7 to read as follows:

"7.

Despite possessing such knowledge, Defendant continued its practice of disposing of said wastes on or near plaintiffs' properties, and at no time issued a warning to the public, including the plaintiffs, that the disposal discharge was migrating beneath plaintiffs' properties."

3.

By amending paragraph 9 read to as follows:

1

"9.

Plaintiffs seek recovery of stigma damages for the diminution in value of their interests in polluted properties or properties located in close proximity to defendant's pollution, which will continue even after complete restoration cleanup, for recovery of damages sufficient to restore the properties to their precontaminated condition, for unjust enrichment damages and lost profits for defendant's unauthorized use of their properties as a toxic waste disposal site without plaintiffs' consent, for recovery of the cost to fully assess as yet unidentified pollution on plaintiffs' properties, and reasonable attorney fees."

4.

By elminating paragraph 10 from the petition.

5.

By amending paragraph 13 to read as follows:

"13.

As to each subclass, the claims asserted arise from common questions of law and fact, to-wit:

a. Defendant's toxic pollution of the land in the Class Area;

b. Diminution of real and leasehold properties value among property owners and residents in the class area;

c. Defendant's knowledge of toxic discharges and pollution of the eco-system;

d. Defendant's concealment of such pollution and failure to warn; and

e. The reasonable value of expenses of litigation, including attorneys fees."

6.

By elminating paragraph 23 from the petition.

7.

By elminating paragraph 24 from the petition.

8.

By elminating paragraph 26 from the petition.

2

9.

By amending paragraph 32 to read as follows:

"32.

As a direct and proximate result of the negligent acts and omissions of Defendant, Plaintiffs have suffered considerable damages and injuries foreseeable to Defendant, specifically:

    a.     Toxic pollution of the lands, waters and properties of each Plaintiff;

    b.     Destruction of the value of Plaintiffs' lands, rendering their lands unmerchantable and without substantial fair market value;

    c.     Exposure of the Plaintiffs' lands, water, and properties to toxic chemical pollution; and

    d.     Annoyance, discomfort and inconvenience occasioned by Defendant's created nuisance, including loss of full use and enjoyment of each of Plaintiffs' properties.

10.

By eliminating paragraph 34 from the petition.

11..

By amending paragraph 39 to read as follows:

"39.

Plaintiffs are entitled to be compensated with funds sufficient to:

a.     Conduct a complete scientific analysis of the nature and magnitude of the latent contamination of their properties attributable to Defendant's operations of waste pits, injection wells, and any other hazardous waste disposal implements;

b.     restore their properties to an uncontaminated state;

c.     unjust enrichment damages for defendant's unauthorized use of Plaintiffs' lands to store and dispose of its hazardous substances without prior consent or compensation to Plaintiffs from the time of trespassatory ingress up to final removal of these pollutants."

12.

By amending the prayer of the original petition as follows:

3

WHEREFORE, Plaintiffs pray on their behalf individually, and behalf of all others similarly situated that the Defendant be cited to appear and answer this Petition and, that after due proceedings be had, that there be judgement entered herein as follows:

1. That an order be entered herein certifying this action and maintaining this action as a class action;

2. That the plaintiff and class members herein be awarded compensatory damages in an amount to be proven at trial, including payment of the costs to restore the land bearing identified pollution to its original, uncontaminated state, unjust enrichment damages for the unauthorized disposal of hazardous wastes on plaintiffs'; properties without their consent, and other property damages;

3. That Defendant pays Plaintiffs funds sufficient for conducting an expedited and comprehensive environmental assessment of plaintiffs' lands to identify all latent pollution thereon or thereunder;

4. For all costs of this suit and for accrued legal interest on any amount awarded from the date of the judicial demand until paid, including reasonable attorney's fees;

5. For all just and equitable relief.

6. They be allowed to amend their petition be amended as prayed for.

BY ATTORNEYS:

TALBOT, CARMOUCHE, MARCHAND, MARCELLO & PARENTON
214 W. CORNERVIEW
POST OFFICE BOX 759
GONZALES, LOUISIANA 70707-0759
TELEPHONE: [504] 644-7777

BY: _____
VICTOR L. MARCELLO
BAR ROLL NO. 9252

FILED

JUN 15 I 34 PM '96

4

Case 3:06-cv-00638-RET-CN   Document 1    08/30/06   Page 19 of 44



18TH JUDICIAL DISTRICT COURT
PARISH OF IBERVILLE
STATE OF LOUISIANA

DOCKET NO. 47,254                                   DIVISION: B

WALTER ALLEN, ET AL

Versus

ROLLINS ENVIRONMENTAL SERVICES, INC.

## SECOND SUPPLEMENTAL AND AMENDING PETITION

NOW INTO COURT, through undersigned counsel, come Plaintiffs, who hereby file this *SECOND SUPPLEMENTAL AND AMENDING PETITION* by stating the following:

**1.**

Plaintiffs desire to amend their Original Petition and First Supplemental and Amending Petition to add the following as party defendants:

a)  Michael A. Sullivan, a resident of Baton Rouge, Louisiana

b)  John C. Arbuthnot, a resident of Baton Rouge, Louisiana

c)  Clean Harbors (Plaquemine), L.L.C., a foreign corporation authorized to and doing business in the State of Louisiana

d)  Clean Harbors, Inc. ("CHI"), in its own right and pursuant to the Single Business Entity Doctrine, is the beneficial owner, and/or manager, and/or operator of the Clean Harbors Plaquemine, LLC injection well facility located in Bayou Sorrel, Louisiana, and is a foreign corporation organized under the laws of another state, but not licensed to do, and doing business, in the State of Louisiana.

e)  Clean Harbors Environmental Services, Inc. ("CHESI"), in its own right and pursuant to the Single Business Entity Doctrine, is the beneficial owner, and/or manager, and/or operator of the Clean Harbors Plaquemine, LLC injection well facility located in Bayou Sorrel, Louisiana, and is a foreign corporation organized under the laws of another state, but licensed to do and doing business in the State of Louisiana

f)  Cyril Hinds, a resident of the State of Louisiana, owned and operated of the Clean Land Air Water Corporation hazardous waste injection well located in Bayou Sorrel, Louisiana

g)  Gerald I. Hebert, a resident of the State of Louisiana, owned and operated the Clean Land Air Water Corporation hazardous waste injection well located in Bayou Sorrel, Louisiana

h)  Steadfast Insurance Company, a foreign insurance company licensed to do and doing business in the State of Louisiana

Page -1-



2.

Plaintiffs desire to amend their original caption to include defendant Michael A. Sullivan, John C. Arbuthnot, Clean Harbors (Plaquemine), L.L.C., Clean Harbors, Inc. ("CHI"), Clean Harbors Environmental Services, Inc. ("CHESI"), Cyril Hinds, Gerald I. Hebert, and Steadfast Insurance Company, and to read *"Walter Allen, Cleveland Lewis and Sadie Lewis v. Rollins Environmental Services, Inc., Michael A. Sullivan, John C. Arbuthnot Clean Harbors (Plaquemine), L.L.C., Clean Harbors, Inc. ("CHI"), Clean Harbors Environmental Services, Inc. ("CHESI"), Cyril Hinds, Gerald I. Hebert, Steadfast Insurance Company*, Docket No.: 47,254, Division "B", 18th Judicial District Court, Parish of Iberville, State of Louisiana.

3.

Plaintiffs also desire to supplement their Original and Supplemental Petitions by adding the following paragraphs, to wit:

"40.

Michael A. Sullivan ("Sullivan") was employed at the injection well facilities from 1978 through 1980 and from 1983 through sometime in 2003 where he served as Site Superintendent, Facility Manager, and/or President of successive owners and operators of the facility.

41.

Sullivan's responsibilities included managing the operation of the facility so that it was in operated in a safe manner protective of the environment and human life.

42.

On information and belief, while employed at the injection well, and continuing through today, Sullivan has engaged in an effort to conceal the existence of several surface impoundments containing buried hazardous and toxic waste from regulators and the public on behalf of himself and the successive owners of this site who employed him from at least 1983 until 2003. Sullivan has realized significant personal and professional gain by engaging in this concealment.

43.

In December 1993, Sullivan received a Remote Sensing Report from a consultant that demonstrated several areas of land that had been impacted by releases of hazardous and toxic wastes, but Sullivan has not produced the Report to authorities in another effort to conceal the existence of extensive pollution and environmental damage cause by the negligent operations of the injection well facility, pipeline and barge terminal.

44.

In the late 1970s and early 1980s, Sullivan participated in, and subsequently concealed evidence of, numerous unauthorized releases of significant quantities of hazardous and toxic wastes from storage tanks once located at the injection well facilities. The unauthorized releases occurred when storage tanks were overfilled from unloading tank trucks and barges. The overflowing wastes flowed onto the

ground and eventually into a ditch or trench that had been dug along side of the storage tanks, and which extended to the northwest corner of the facility into the swamps and channels of Bayou Sorrel.

45.

As a result of Sullivan's ongoing failure, actions and omissions, chemical constituents and contamination, including the isomers of hexachlorocyclohexane, are still migrating at and from this facility into ground and surface waters of the State of Louisiana, and impacting and threatening the property and lives of the Plaintiffs through contamination of a drinking water aquifer beneath their land. These are continuing and threatened actions and omissions by Sullivan.

46.

John C. Arbuthnot ("Arbuthnot") has been an environmental specialist for the Clean Harbors (Plaquemine), Inc. ("Clean Harbors") injection well facilities since September 7, 2002 responsible for investigating environmental matters at the facilities and reporting those matters to the Louisiana Department of Environmental Quality.

47.

On information and belief, Arbuthnot has engaged in an effort to conceal the true and correct history of the existence, operations and use of the former surface impoundments on the Clean Harbors property by providing to state authorities the misleading and incorrect characterization of these surface impoundments as drilling mud pits or gas well work-over pits even when he has been presented convincing evidence that the surface impoundments were actually used to store and dispose of hazardous and toxic wastes. Arbuthnot has realized significant personal and professional gain as a result of this concealment.

48.

On information and belief, Arbuthnot has also engaged in an effort to conceal the existence of significant quantities of hazardous and toxic pollutants in these surface impoundments by withholding analytical data for over three (3) years.

49.

As a result of Arbuthnot's actions and omissions, chemical constituents and contamination, including the isomers of hexachlorocyclohexane, are still migrating at and from this facility into ground and surface waters of the State of Louisiana, and impacting and threatening the property and lives of the Plaintiffs through contamination of a drinking water aquifer beneath their land. These are continuing and threatened actions and omissions by Arbuthnot.

50.

Clean Harbors Plaquemine, L.L.C. ("CHP") became owner and operator of the injection well facilities on September 7, 2002 and has since then encouraged, aided, abetted, and rewarded Sullivan and Arbuthnot in their efforts to conceal the severity and breadth of the environmental contamination released from the surface impoundments and pipeline.

51.

CHP has taken individual and additional measures to conceal the fact that hazardous and toxic substances are being released into the Plaintiffs' environment

Page -3-

by participating in an effort on May 27, 2004 to keep independent scientists and experts from collecting flood water samples in the vicinity of the injection well facilities.

52.

The scientists and experts were able to collect a sample on May 27, 2004 which ultimately demonstrated the presence of the chemical Toluene and the insecticide Aldrin in the flood waters that inundated many homes and property in the community of Bayou Sorrel for several weeks thereafter. These pollutants were released from the buried surface impoundments at the Clean Harbors facility and have caused the contamination of land and property belonging to the putative class members.

53.

On information and belief, CHP has required former employees to endorse confidentiality agreements prohibiting the former employees from discussing any events, including those complained of herein, that have occurred at the facility and have adversely impacted the environment of the Plaintiffs and putative class members.

54.

As a result of CHP's ongoing failure, actions and omissions, chemical constituents and contaminants, including the isomers of hexachlorocyclohexane, are still migrating at and from this facility into ground and surface waters of the State of Louisiana, and impacting and threatening the property and lives of the Plaintiffs through contamination of a drinking water aquifer beneath their land. These are continuing and threatened actions and omissions by CHP.

55.

Clean Harbors, Inc. ("CHI") is the parent corporation of its wholly-owned subsidiary, Clean Harbors Plaquemine, L.L.C. CHI has knowingly assisted CHP in its acts to encourage, aide, abet, and reward Sullivan and Arbuthnot in their efforts to conceal the severity and breadth of the environmental contamination released from the surface impoundments, tank drainage ditch, and pipeline.

56.

CHI has knowingly participated in the individual and additional measures taken by CHP to conceal the fact that hazardous and toxic substances are being released into the Plaintiff's environment by participating in an effort on May 27, 2004 to keep independent scientists and experts from collecting flood water samples in the vicinity of the injection well facilities.

57.

On information and belief, CHI, through its subsidiary CHP, has required former employees to endorse confidentiality agreements prohibiting the former employees from discussing any events, including those complained of herein, that have occurred at the facility and have adversely impacted the environment of the Plaintiffs and putative class members.

58.

As a result of CHI's ongoing failure, actions and omissions, chemical constituents and contamination, including toluene, aldrin, and the isomers of

Page -4-



hexachlorocyclohexane, are still migrating at and from this facility into ground and surface waters of the State of Louisiana, and impacting and threatening the property and lives of the Plaintiffs through contamination of a drinking water aquifer beneath their land. These are continuing and threatened actions and omissions by CHI.

59.

Defendants Cyril Hinds and Gerald Hebert were owners/operators of the Clean Land Air & Water Corporation ("CLAW") that owned and operated the deep well injection facility in Bayou Sorrel, Louisiana from March 1976 to July 29, 1978 when the facilities were sold to Rollins. Hazardous and toxic waste was transported to this facility via tank truck and barge.

60.

During the years of 1977 and 1978, CLAW, through Hinds and Hebert, constructed and operated several storage pits at the deep well injection facility where hazardous and toxic waste was improperly stored and/or disposed. Wastes shipped by tank truck were routinely emptied into unpermitted pits at the well site to allegedly allow suspended solids to settle out of the liquids in order to prevent structural and operational damage to the well. These illegal pits were of poor design and were constructed in a stream bed with extremely permeable and silty soils. Substantial quantities of hazardous and toxic wastes placed into these pits have ultimately been discharged into the subsurface soils and ground water where they are presently located and create an imminent and substantial endangerment to the environment.

61.

Defendants Hinds, Hebert and CLAW constructed and utilized a polyvinyl chloride ("PVC") plastic pipeline to transfer waste from a barge unloading area to the injection well located at a distance of some one and one-half (1 ½) miles away. The PVC pipeline was located in sensitive environmental areas including swamp and wetland areas. The PVC pipeline ruptured, collapsed and otherwise broke apart on numerous occasions resulting in illegal discharges of liquid waste to the surrounding soil, surface waters and ground waters resulting in extensive subsurface contamination and pollution, as well as damage to the natural resources. That contamination and pollution continues to exist and migrate at a significant depth below the land surface.

62.

Based upon records from the Louisiana Department of Natural Resources, Office of Conservation, these storage pits were partially emptied and backfilled after the sale of the CLAW injection well facilities to Rollins.

63.

Recent analyses of soil and ground water samples in the area above and around these storage pits has revealed the presence of chemical constituents from wastes placed into the pits during 1977 and 1978. These pits and their chemical constituents are contributing to the damages experienced by the Plaintiffs and class members.

64.

The Plaintiffs have conducted investigation, testing and monitoring and have discovered evidence that the chemical contamination discharged from the concealed 5 pits, a concealed storage tank drainage ditch, and along the pipeline corridor, have and threaten to impact usable groundwater in the Community of Bayou Sorrel. The

Page -5-

top of the Plaquemine Aquifer, a usable groundwater source, is located at one hundred (100) feet below land surface of the pits, ditch and pipeline. Soil and groundwater borings have provided evidence that the chemical contamination has been found at depths up to fifty (50) feet below the land surface. Drinking water well samples have indicated the presence of several chemical contaminants that were disposed in the pits and tank drainage ditch, as well as chemical contaminants that leaked from the barge unloading pipeline.

65.

The Plaintiffs have and own land above this same usable groundwater source, and have and own water wells completed in that source. Engineering studies have shown that the ground water flow from the contaminated areas at the injection well site are seasonally impacted by the flow of the Mound Ditch and Bayou Sorrel which flow in the direction, and on the border, of the Plaintiffs' property. The Plaintiffs are making a claim herein to recover damages for the evaluation and remediation of any contamination or pollution impacting or threatening usable ground water. As such, proper notice of this claim is being provided to the Louisiana Department of Environmental Quality and the Louisiana Department of Natural Resources pursuant to LSA-R.S. 30:2015.1.

66.

Plaintiffs also make a claim, individually and on behalf of the putative class, against Defendants CHP, CHI, Hinds and Hebert for trespass resulting from the movement of injected toxic and hazardous waste beneath property owned by the Plaintiffs and putative class members.

67.

Each day that aqueous waste is injected into the CHP injection well, the size of the waste plume, sometimes referred to as the waste front radius, increases and trespasses beneath land owned by the Plaintiffs and putative class members, in a pattern projected by these Defendants' own engineers that will ultimately reach as far as seven (7) miles to the south and southwest of the injection well.

68.

In a report prepared for former site owner, Rollins Environmental Services of Louisiana, Inc., and previously submitted into the record of this proceeding, Atwater Engineers informed Rollins that the waste plume was already located beyond the property owned by the injection well facility, and would continue to grow with continued use of the well. CHI and CHP began operating this same injection well in September 2002 and have since injected millions of gallons of hazardous and toxic waste into the waste plume, and has caused the plume to increase in size.

69.

Plaintiffs, on behalf of themselves and all others similarly situated, pray the Court order Defendants CHI, CHP, Hinds and Hebert to establish a fund to pay royalties and damages to the class for the trespass upon their land by these toxic and hazardous wastes, and for the diminution in the value and stigma now attached to their land as a result of the actions of these Defendants.

70.

At all pertinent times there were in full force and effect policies of comprehensive general liability insurance and/or environmental liability insurance

which included excess liability policies, issued by Steadfast Insurance Company, one particular policy bearing policy number: PLC 3743936 0, which company is also made defendant herein, to and in favor of the CHI and/or CHP, which policies afford coverage for liability of the nature asserted herein against the Defendants, and which policies inure, *inter alia*, to the benefit of Plaintiffs under the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:655, thereby entitling Plaintiffs to maintain this direct action against said defendant insurer, and thereby rendering said defendant insurer liable, in solido, with CHI and CHP to Plaintiffs for damages as sued for herein.

### 71.

Plaintiffs and the class are entitled to exemplary damages against Defendants Sullivan and Arbuthnot for their wanton and reckless disregard for the public safety in the storage, handling, transporting, and disposal of hazardous and toxic materials between 1983 and 1997.

### 4.

The Plaintiffs learned of these acts and omissions by these defendants less than one year ago and, therefore, this action has not prescribed.

### 5.

The Plaintiffs neither make any further allegations, nor take any further actions against Rollins Environmental Services of Louisiana, Inc. or its successor Safety-Kleen (Plaquemine), Inc. and agree that this matter shall remain stayed as against these entities pursuant to the Bankruptcy Court Order of June 2000.

### 6.

Plaintiffs re-allege and reiterate each and every allegation contained in their Original and Supplemental and Amending Petitions, against the defendants named herein, as if set forth herein *in extenso*, excluding any class action allegations.

WHEREFORE, plaintiffs pray that defendants be cited, and served, and after due proceedings are had there be judgment rendered in their favor and against all Defendants named in this and previous petitions/complaints, *in solido*, for just and reasonable compensatory damages, exemplary damages, and for such other relief as previously prayed for and as may be indicated and provided by law.

Respectfully Submitted:

DODSON & HOOKS, APLC
One Maritime Centre
17405 Perkins Road
Baton Rouge, Louisiana 70810
Telephone: 225-756-0222
Facsimile: 225-756-0025

Page -7-

FILED

2005 MAY 24 P 4 07

BY CLERK - EX-OFFICIAL

By: _[signature]_

Richard J. Dodson, Bar Roll No. 4982
Kenneth H. Hooks, III, Bar Roll No. 25097

**PLEASE SERVE:**

CLEAN HARBORS (PLAQUEMINE), LLC
Through its agent for service of process
CT Corporation
8550 United Plaza Blvd
Baton Rouge, La 70809

Michael A. Sullivan
8931 Briarwood Place
Baton Rouge, Louisiana 70809

John C. Arbuthnot
17218 Sharpsburg Avenue
Baton Rouge, LA 70817

Clean Harbors (Plaquemine), L.L.C.
Through its agent for service of process
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, Louisiana 70809

Clean Harbors, Inc.
Attn: Alan McKim
1501 Washington Street
P.O. Box 859048
Braintree, MA 02185-9048
Pursuant t Louisiana Long Arm Statute, La. R.S. 13:3201

Clean Harbors Environmental Services, Inc.
Through its agent for service of process
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, Louisiana 70809

Cyril Hinds
820 Heart D. Farm Road
Youngsville, Louisiana 70592

Gerald L Hebert
1103 Lee Avenue
Lafayette, Louisiana 70501

Steadfast Insurance Company
Through its agent for service of process
Louisiana Secretary of State
8549 United Plaza Blvd.
Baton Rouge, Louisiana 70809

FILED

2005 MAY 24 P 4: 07

DY CLERK - EXOFFICIAL
IBERVILLE, LOUISIANA

18ᵀᴴ JUDICIAL DISTRICT COURT
PARISH OF IBERVILLE
STATE OF LOUISIANA

DOCKET NO. 47,254                                    DIVISION: "A"

WALTER ALLEN, ET AL

Versus

ROLLINS ENVIRONMENTAL SERVICES, INC.

## THIRD SUPPLEMENTAL AND AMENDING PETITION

NOW INTO COURT, through undersigned counsel, come Plaintiffs, who hereby file this *THIRD SUPPLEMENTAL AND AMENDING PETITION* by stating the following:

1.

Plaintiffs desire to amend their Original Petition, First Supplemental and Amending Petition, and Second Supplemental and Amending Petition to add the following as a party plaintiff and putative class representative:

   a)   Kim Fowler, a resident of the full age of majority of the state of Louisiana who owns land located in the community of Bayou Sorrel, Louisiana.

2.

Plaintiffs also desire to amend their Original and Supplemental Petitions, to wit:

"66.

Plaintiffs also make a claim, individually and on behalf of the putative class, against Defendants CHP, CHI, CHESI, Hinds and Hebert for trespass resulting from the movement of injected toxic and hazardous waste beneath property owned by the Plaintiffs and putative class members.

\* \* \* \* \* \* \* \* \* \*

68.

In a report prepared for former site owner, Rollins Environmental Services of Louisiana, Inc., and previously submitted into the record of this proceeding, Atwater Engineers informed Rollins that the waste plume was already located beyond the property owned by the injection well facility, and would continue to grow with

1

continued use of the well. CHI, CHESI and CHP began operating this same injection well in September 2002 and have since injected millions of gallons of hazardous and toxic waste into the waste plume, and has caused the plume to increase in size.

69.

Plaintiffs, on behalf of themselves and all others similarly situated, pray the Court order Defendants CHI, CHESI, CHP, Hinds and Hebert to establish a fund to pay royalties and damages to the class for the trespass upon their land by these toxic and hazardous wastes, and for the diminution in the value and stigma now attached to their land as a result of the actions of these Defendants.

70.

At all pertinent times there were in full force and effect policies of comprehensive general liability insurance and/or environmental liability insurance which included excess liability policies, issued by Steadfast Insurance Company, one particular policy bearing policy number: PLC 3743936 0, which company is also made defendant herein, to and in favor of the CHI, CHESI and/or CHP, which policies afford coverage for liability of the nature asserted herein against the Defendants, and which policies inure, *inter alia*, to the benefit of Plaintiffs under the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:655, thereby entitling Plaintiffs to maintain this direct action against said defendant insurer, and thereby rendering said defendant insurer liable, in solido, with CHI, CHESI and CHP to Plaintiffs for damages as sued for herein."

3.

Plaintiffs also desire to supplement their Original and Supplemental Petitions by adding the following paragraphs, to wit:

"72.

Clean Harbors Environmental Services, Inc. ("CHESI") has knowingly assisted CHP in its acts to encourage, aide, abet, and reward Sullivan and CHESI employee Arbuthnot in their efforts to conceal the severity and breadth of the environmental contamination released from the surface impoundments, tank drainage ditch, and pipeline.

2

73.

CHESI has knowingly participated in the individual and additional measures taken by CHP to conceal the fact that hazardous and toxic substances are being released into the Plaintiff's environment by participating in an effort on May 27, 2004 to keep independent scientists and experts from collecting flood water samples in the vicinity of the injection well facilities.

74.

On information and belief, CHESI has required former employees to endorse confidentiality agreements prohibiting the former employees from discussing any events, including those complained of herein, that have occurred at the facility and have adversely impacted the environment of the Plaintiffs and putative class members.

75.

As a result of CHESI's ongoing failure, actions and omissions, chemical constituents and contamination, including toluene, aldrin, and the isomers of hexachlorocyclohexane, are still migrating at and from this facility into ground and surface waters of the State of Louisiana, and impacting and threatening the property and lives of the Plaintiffs through contamination of a drinking water aquifer beneath their land. These are continuing and threatened actions and omissions by CHESI."

4.

Plaintiffs re-allege and reiterate each and every allegation contained in their Original and Supplemental and Amending Petitions, against the defendants named herein, as if set forth herein *in extenso.*

5.

The Plaintiffs amend the caption of this suit to read:

"18TH JUDICIAL DISTRICT COURT
PARISH OF IBERVILLE
STATE OF LOUISIANA

DOCKET NO. 47,254                     DIVISION: "A"

WALTER ALLEN and KIM FOWLER,
individually and on behalf of all others similarly situated

3

Versus

ROLLINS ENVIRONMENTAL SERVICES, INC.
CLEAN HARBORS, INC., CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.,
CLEAN HARBORS PLAQUEMINE, LLC, MICHAEL A. SULLIVAN, JOHN C.
ARBUTHNOT, CYRIL HINDS, GERALD I. HEBERT and
STEADFAST INSURANCE COMPANY

WHEREFORE, Plaintiffs pray that citation and service issue and, after due proceedings are

had, there be judgment rendered in their favor and against all Defendants named in this and previous

petitions/complaints, *in solido*, for just and reasonable compensatory damages, exemplary damages,

and for such other relief as previously prayed for and as may be indicated and provided by law.

Respectfully Submitted:

DODSON & HOOKS, APLC
One Maritime Centre
17405 Perkins Road
Baton Rouge, Louisiana 70810
Telephone: 225-756-0222
Facsimile: 225-756-0025

By: _____

Richard J. Dodson, Bar Roll No. 4982
Kenneth H. Hooks, III, Bar Roll No. 25097

PLEASE SERVE:

Clean Harbors (Plaquemine), LLC
Through its agent for service of process
CT Corporation
8550 United Plaza Blvd
Baton Rouge, La 70809

Michael A. Sullivan
8931 Briarwood Place
Baton Rouge, Louisiana 70809

John C. Arbuthnot
17218 Sharpsburg Avenue
Baton Rouge, LA 70817

Clean Harbors, Inc.
Attn: Alan McKim
1501 Washington Street
P.O. Box 859048
Braintree, MA 02185-9048
Pursuant to the Louisiana Long Arm Statute, La. R.S. 13:3201

4

Clean Harbors Environmental Services, Inc.
Through its agent for service of process
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, Louisiana 70809

Gerald L. Hebert
1103 Lee Avenue
Lafayette, Louisiana 70501

Steadfast Insurance Company
Through its agent for service of process
Louisiana Secretary of State
8549 United Plaza Blvd.
Baton Rouge, Louisiana 70809

5

FILED

2006 MAR -7 A II: 43

DY CLERK - EXOFFICIAL
IBERVILLE, LOUISIANA

DOCKET NO. 47,254                                        DIVISION: D

WALTER ALLEN, ET AL

Versus

ROLLINS ENVIRONMENTAL SERVICES, INC.

---

## *MOTION TO CERTIFY CLASS ACTION*

**NOW INTO COURT,** through undersigned counsel come plaintiffs, Walter W. Allen and Kim Fowler, who respectfully move this Court to-wit:

1.

On April 4, 1996, Plaintiffs filed a Petition for Damages that included class action allegations ("Petition") on behalf of the named Plaintiffs. Included within Plaintiffs' Petition for Damages is a request that the matter be certified as a class action pursuant to the Code of Civil Procedure Article 591 *et seq.*[1]

2.

Plaintiffs' claims clearly fall within the ambit of Louisiana Code of Civil Procedure Article 591 *et seq.* in that the requisites of that article are met, those being that the class is so numerous that the joinder of all members is impractical to their common questions of law and fact to the class, the claims of the representative parties are typical of the claims of the class, the representative parties will fairly and adequately protect the interests of the class, and the class is defined objectively in terms of ascertainable criteria.

3.

Because all of the requisites are clearly present in this case and, for the reasons to be more fully addressed in Plaintiffs' Memorandum in Support of the Motion to Certify Class Action that will be submitted pursuant to a briefing schedule to be set by the Court, Plaintiffs request class certification.

---

[1]A Motion to Certify Class Action was previously filed by Plaintiffs' former counsel, and that motion was scheduled to be heard just prior to the imposition of the automatic stay by the Bankruptcy Court in June 2000.

1

SCANNED
IBERVILLE PARISH
PLAQUEMINE, LA

4.

The Plaintiffs respectfully seek to have this Honorable Court certify a class that will consist of all present owners of real properties that are located in Iberville Parish, Louisiana and within ten (10) miles of the Defendant's injection well site.

5.

Plaintiffs move this Court to conduct a hearing on the applicability of class status at a time and date convenient for this Honorable Court and Order the class be certified pursuant to Louisiana law.

**WHEREFORE**, Plaintiffs pray that after due proceedings are had, that this Honorable Court find this action should be prosecuted and maintained as a class action for the following class:

> All present owners of real properties that are located in Iberville Parish, Louisiana and within ten (10) miles of the Defendant's injection well site

Respectfully submitted:

By: _____
RICHARD J. DODSON (04982)
KENNETH H. HOOKS, III
**DODSON & HOOKS (APLC)**
One Maritime Centre
17405 Perkins Road
Baton Rouge, La. 70810
Tel: (225)756-0222

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record to these proceedings by facsimile before filing and, thereafter, by placing a copy of same in the United States mail, postage prepaid and properly addressed this ___ day of June, 2006.

_____
Kenneth H. Hooks, III

FILED

2006 JUL -6 P 2: 17

2

# DODSON & HOOKS

*A Professional Law Corporation*
One Maritime Centre
17405 Perkins Road
Baton Rouge, Louisiana 70810

RICHARD J. DODSON
KENNETH H. HOOKS, III
BRENT P. FREDERICK
ANGELA R. CARLISLE

Telephone: (225) 756-0222
Facsimile: (225) 756-0025
E-Mail: Scamanlaw@aol.com

# FACSIMILE

To: *J. Alan Harrell*

Fax #: *225-381-9197*

From: *Kenneth H. Hooks, III*

Date: *07-31-2006*

Subject: *Clean Harbors litigation*

Pages: *6* (Including Cover)

## CONFIDENTIALITY NOTICE

This facsimile message may contain privileged and confidential information intended only for the use of the individual or entity name above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited by law. If you have received this message in error, please notify sender by telephone at (225) 756-0222. Thank you.

EXHIBIT

*B*

# DODSON & HOOKS

*A Professional Law Corporation*
One Maritime Centre
17405 Perkins Road
Baton Rouge, Louisiana 70810

RICHARD J. DODSON
KENNETH H. HOOKS, III
BRENT P. FREDERICK
ANGELA R. CARLISLE

Telephone: (225) 756-0222
Facsimile: (225) 756-0025
E-Mail: SeamanLaw@aol.com

July 31, 2006

**_Via Facsimile: (225) 381-9197_**
J. Alan Harrell
PHELPS DUNBAR
445 North Boulevard, Suite 701
Baton Rouge, LA 70802

    Re:    Clean Harbors Litigation

Dear Alan:

    We look forward to meeting with you on August 3 and 4 to discuss the upcoming mediation of these matters. With that in mind, we would like to provide you with an outline of the actions and claims presented in these matters.

## Giauque I

    The first matter is *Giauque, et al. v. Clean Harbors Plaquemine, LLC and Michael A. Sullivan*, suit number 60195 in the 18th JDC ("*Giauque I*"). In that citizen suit, the following claims are made for violations of Louisiana's environmental laws and regulations.

    The ongoing violation of LSA-R.S. 30:2202(C) by disposing of hazardous waste in a Class I injection well where the well head or any part of the casing is located within the banks or boundaries of a surface water body. Although the 1st Circuit has recently reversed the preliminary injunction issued by the court on the Section 2202 claim, we feel confident the Supreme Court will grant our writ application to correct the errors of the appellate court. Should that happen, then Clean Harbors will no longer be able to dispose of hazardous waste in this injection well. We will also seek penalties of $10,000 per day for these violations which now totals at least $14 million dollars. Should the Supreme Court refuse to grant a writ, we will proceed to re-urge the motion utilizing the guidance provided by the First Circuit and will prevail in closing this illegal well.

    Michael Sullivan, on behalf of Clean Harbors, concealed the true history and use of the 5 pits from the LDEQ, and submitted official documents that contained material misrepresentations of fact. In the course of this effort, Sullivan also withheld information that he should have disclosed to the

Mr. J. Alan Harrell
July 31, 2006
Page 2

LDEQ, including the results of the 1993 ENCOTEC investigation and the existence of the large

trench that is partially buried beneath the existing levee. Clean Harbors has done nothing to correct the record with the LDEQ on these matters.

Because of this ongoing failure to fully disclose the truth about the actual nature of these pits, the contamination and damage along the pipeline, and the location and history of the trench, penalties of $10,000 per day since the date Clean Harbors acquired the facility is being sought against the Clean Harbors.

Clean Harbors has also violated La R.S. 30: 2203 by suffering, allowing and permitting discharges from the pits in the form of surface and ground water contamination. As you know, we have already filed a motion for the maximum penalties of $10,000 per day for not only the violation of Section 2203, but also for the violation of the court's temporary restraining order. The violation of Section 2203 dates back from September 2002 to the present. The violation of the TRO began on May 3, 2004 and continued for 2 years.

You are familiar with the court's order requiring the parties to submit clean up plans to remove the pollution source from the Area of Concern ("AOC"). There is no reason that the Court should reject our proposed plan. We also feel confident the LDEQ will not object to the removal of the source at this time. Based upon the requirements of our plan, we estimate the engineering, mobilization, demobilization, excavation, transportation, incineration, and related health and safety costs will be in the range of not less than $14 million to complete. This does not include any costs for dealing with contaminated ground or surface waters. It also does not address any other corrective action such as pumping, treating and disposing the ground water for several decades, as well as any required post-closure monitoring. Based upon our plans to secure court orders to restore the existing Area of Concern to its original state, we estimate the entire corrective action, including continuing oversight by us and the court, will cost in the range of $55 million over several years.

In addition to the penalties and damages discussed above, we are also seeking damages to the natural resources. It is our intention to ask the court to award damages in an amount of fifty (50) cents per gallon of water that must be recovered, treated and disposed. If any contaminated water remains, we will also ask the court to award a like amount based upon engineering calculations of the total volume of affected water.

We also believe it would be reasonable for the court to use LSA-R.S. 30:2025(B)(1)(b) as a guideline for determining the amount of damages to the natural resources. This includes consideration the cost of restoring the affected area to its condition as it existed before the violation and its present market value and all the costs of all reasonable and necessary investigations made or caused to be made. Citizen suits are statutorily authorized under the LEQA, and we believe the court would be well within its discretion in applying Section 2025(B)(1)(b) criteria to these cases.

Received    Jul-31-2006  11:04am    From-                    To-Phelps Dunbar Baton    Page  003

Not only would this apply to the damages caused by the new AOC, but it would also apply to the 1½ mile stretch of swamp, bayous and wetlands beneath the hazardous waste pipeline that travels from the barge terminal to the main operations area. We can not estimate the cost of the clean-up/remediation/restoration of the 1 ½ mile are until there is further investigation.

In all locations where natural resources damages are suspected, Plaintiffs will seek further Orders for investigation. This includes collecting and analyzing samples from soil, ground water, sediment, and trees and other biota. Dead and stressed vegetation can be seen in several locations in recent aerial photographs.

We are in the process of seeking a Court Order for comprehensive investigation of potential and real effects to the animal life surrounding the operations area and pipeline right-of-way. The impressive expert report of Dr. George Castille was received into evidence by the Court during previous hearings. In that report there are several of the hundreds of color photographs taken by Dr. Castille including numerous, large wading bird rookeries located within several hundred feet of the injection well and in the direction of the flow of the surface water that recedes off the pits every year. Commercial crawfish traps were seen by our experts in the channel several yards away from the new AOC. Turtles are known to dig holes in the facility levee where they lay their eggs. Witnesses have advised of catching large catfish that are known to dwell in the sediments of Bayou Sorrel and Mound Ditch next to the site where annual Spring and Winter surface waters flow over the pits into these bayous.

To date, Plaintiffs have merely scratched the surface of the environmental catastrophe which is ongoing at Clean Harbors' Bayou Sorrell facility. The Court will be asked to remediate every granule of soil and every molecule of water before this case will conclude should this mediation not succeed.

## Giauque II

This second citizen suit, *Giauque, et al. v. John Arbuthnot, et al.*, number 62328 in the 18th JDC, contains many of the same violations as the *Giauque I* suit, but committed by different parties. In addition, there are the violations for submitting additional false documents to the LDEQ in September 2004, as well as the harassment and intimidation of our experts with the local sheriff's office. Clean Harbors, Inc. is THE named party here and will be THE party cast in Judgment. Arbuthnot's sins will cause a multiplier of 2 to be used in casting penalties against CHI.

## Walter Allen Class Action

*Allen, et al. v. Rollins Environmental Services*, number 47,254 in the 18th JDC brings claims for property damage, nuisance and trespass caused by the deep well injection of hazardous waste on an almost daily basis. Long ago it was recognized by the successive owners of the injection well, including Clean Harbors, that the waste plume, or waste front radius, was beyond the boundaries of

Mr. J. Alan Harrell
July 31, 2006
Page 4

the land owned by the operators of the injection well.

Site records demonstrate that the plume is moving in a southeasterly direction toward the community of Bayou Sorrel. This is caused by the natural movement of the strata into which the waste is injected. The Schwing Estate claims ownership of the land on what is known as the "Island," on Gracie Lane. However, there are numerous individual land owners on Bayou Sorrel Road which runs along the Atchafalaya Basin levee to the southwest of the facility.

The Schwing Estate has received a "royalty" each year in the amount of 1/8 of the gross revenue generated by the injection well. However, the other land owners have received nothing from Clean Harbors for what amounts to storage of hazardous wastes beneath their land and homes. The law is clear that owners of property in Louisiana own everything beneath the surface of their land.

Additional claims are made in the Allen litigation related to contamination of surrounding land and homes caused by the annual flooding of the new AOC. The Plaintiffs will prove that flood waters come into contact with the contaminated soil and, through evaporation or "transpiration" of the contaminated water, contaminants are deposited to land, homes, attics and other personal property in the community. During the dry season, the grass through which some of this contaminated water transpires is cut, resulting in migration of more contaminated soil, dust and grass clippings.

We have specifically pled *Corbello* claims in connection with the new AOC, the old trench, and the pipeline right-of-way. The court has much discretion in determining these damages. In *Corbello*, after the rehearing to clarify that the burden of proof in environmental pollution cases is a preponderance of the evidence, the Supreme Court found that a jury award of $33,000,000.00 was appropriate for restoration costs to land where salt water disposal from an old drilling operation may have contaminated an underground aquifer. We are filing a motion to sample the new, deep wells that were said to have been installed on the perimeter of the new AOC in May 2006.

### The Qui Tam Suit

In *USA, ex rel. Duncan v. Safety-Kleen, et al.*, number 04-0436 in the USDC Middle District of Louisiana, our client has brought suit against the Clean Harbors entities for submitting false claims in connection with federal contracts they hold. In addition, this suit brings claims for monies received by Clean Harbors in connection with disposing of federal waste, including Superfund waste, while the injection well facility was in violation of state and federal laws. Recovery of treble damages will be awarded, as well as disgorgement of Clean Harbors' federal contracts.

### Citizen Suit Personal Injury Claims

Terry Giauque has alleged that the anencephaly of her baby in 1992 was a direct result of her exposures to chemicals in surface water run off from the 5 pits located in the north west corner of

Received   Jul-31-2006  11:04am   From-                        To-Phelps Dunbar Baton      Page 005

Mr. J. Alan Harrell
July 31, 2006
Page 5

the facility, from airborne migration of chemicals from the pits, and from spilled material along the barge unloading pipeline. Ms. Giaque received these exposures during the time she lived in and visited the community of Bayou Sorrel. The mechanisms and locations of exposure include wading in and other contact with flood waters, field trips, consuming blackberries collected from along the pipeline, and other recreational activities along the hazardous waste pipeline, as well as living in the community.

The continued emotional distress caused by the loss of her baby has been severely aggravated by the continued presence of these carcinogenic, teratogenic and acutely toxic chemicals in the soil, water and air of Bayou Sorrel. The cavalier and recalcitrant manner in which Clean Harbors has handled the situation is also a direct cause of her reasonable fears and concerns.

Darla Larson is not making any personal injury claims except on behalf of her minor child. Ms. Larson has reasonable belief that epileptic seizures experienced by her daughter, Allie Larson, are a direct result of her exposures *in utero* and *in vivo*, to toluene, aldrin, dimethylformamide and organochlorine pesticides in surface water run off from the 5 pits located in the north west corner of the facility, and from spilled material along the barge unloading pipeline. Ms. Larson and her daughter received these exposures during the time they lived in and visited the community of Bayou Sorrel. The mechanisms and locations of exposure include wading in and other contact with flood waters, field trips, consuming blackberries collected from along the pipeline, and other recreational activities along the hazardous waste pipeline, as well as living in the community. Allie Larson is daily taking the prescribed medications Depakote, Adderall, and Seroquel.

Allie Larson also experiences severe emotional distress as a result of her injuries, the ongoing presence of these chemicals, and the negligent manner in which the problem has been handled.

### Statutorily Authorized Attorney Fees and Costs

The Citizen Suit Statute provides for attorney fees and costs to be recovered from Clean Harbors. Heretofore, the work put forth by Plaintiff's Counsel justifies at least 40 million dollars in fees and costs.

With regards,

Very truly yours,
**DODSON & HOOKS, APLC**

Kenneth H. Hooks, III

KHH/jlj

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Walter W. Allen, Cleveland Lewis, Sadie Lewis, and Kim Fowler

### DEFENDANTS
Rollins Environmental Services of La., Inc. (see attached sheet)

**(b)** County of Residence of First Listed Plaintiff **Iberville**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
SEE ATTACHED SHEET

Attorneys (If Known)
SEE ATTACHED SHEET

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in one Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of | ☐ 330 Federal Employers' Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 196 Franchise | | & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(8)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☒ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☒ 240 Torts to Land | ☐ 444 Welfare | **PRISONER PETITIONS** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Habeas Corpus:** | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 530 General | | |

**PERSONAL INJURY** (torts column detail): ☐ 362 Personal Injury - Med. Malpractice; ☐ 365 Personal Injury - Product Liability; ☐ 368 Asbestos Personal Injury Product Liability
**PERSONAL PROPERTY:** ☐ 370 Other Fraud; ☐ 371 Truth in Lending; ☐ 380 Other Personal Property Damage; ☐ 385 Property Damage Product Liability
(Habeas Corpus): ☐ 535 Death Penalty; ☐ 540 Mandamus & Other; ☐ 550 Civil Rights; ☐ 555 Prison Condition

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1332 Class Action Fairness Act

Brief description of cause: Purported Class Action for Property Damage

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ N/A

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE SEE ATTACHED SHEET DOCKET NUMBER _____

DATE 8/30/06

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 4699003935 AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

RET
JJB



Case 3:06-cv-00638-RET-CN   Document 1   08/30/06   Page 41 of 44

# Attachment for Civil Cover Sheet

## I. (a) Plaintiffs:

Walter W. Allen, Cleveland Lewis, Sadie Lewis, and Kim Fowler

**Defendants:**

Rollins Environmental Services of La., Inc.; Michael A. Sullivan; John C. Arbuthnot; Clean Harbors (Plaquemine), L.L.C.; Clean Harbors, Inc.; Clean Harbors Environmental Services, Inc.; Cyril Hinds; Gerald I. Hebert; and Steadfast Insurance Company

## I. (c) Counsel

Plaintiffs:

Richard J. Dodson
Kenneth H. Hooks
Dodson & Hooks, A P.L.C.
One Maritime Center
17405 Perkins Road
Baton Rouge, LA 70810
(225) 756-0222

Defendants:

Steadfast Insurance Company

Marshall M. Redmon
J. Alan Harrell
Holly G. Hansen
Phelps Dunbar LLP
445 North Blvd., Suite 701
Baton Rouge, LA 70802
(225) 346-0285

Clean Harbors (Plaquemine), LLC
Clean Harbors Environmental Services, Inc.
Michael A. Sullivan
John C. Arbuthnot

Eric E. Jarrell
Michael D. Roche
Rebecca Dietz
King, LeBlanc & Bland
201 St. Charles Avenue, Suite 3800
New Orleans, LA 70170
(504) 582-3800

Barry Marionneaux
F. Charles Marionneaux
Marionneaux & Marionneaux
23615 Railroad Avenue
Plaquemine, LA 70764
(225) 687-6884

BR.459910.1

| Clean Harbors, Inc. | Barry Marionneaux |
| | F. Charles Marionneaux |
| | Marionneaux & Marionneaux |
| | 23615 Railroad Avenue |
| | Plaquemine, LA 70764 |
| | (225) 687-6884 |
| | |
| | Whitton E. Norris, III |
| | Davis, Malm & D'Agostine, P.C. |
| | One Boston Place |
| | Boston, Massachusetts 02108 |
| | (617) 367-2500 |
| | |
| Gerald I. Hebert | William L. Downing |
| | 10988 N. Harrell's Ferry Road, Suite 10 |
| | Baton Rouge, LA 70810 |
| | (225) 273-2055 |
| | |
| Cyril Hinds | Unrepresented |
| 820 Heart D. Farm Road | |
| Youngsville, LA 70592 | |
| | |
| Rollins Environmental Services of La., Inc. | Unrepresented |

## VIII. Related Pending Cases

(1)     *In re:  Bayou Sorrel Class Action*, Civil Action No. 6:04CV1101, Judge Haik

(2)     *United States of America, el rel., Claude I. Duncan v. Safety-Kleen (Plaquemine), L.C.C., et al.*, Civil Action No. 04-436, Judge Brady

BR.459910.1

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

NOTICE OF DOCUMENTS NOT FILED IN RECORD

CIVIL NO. 06-638

Walter Allen

VERSUS

Rollins Environmental

ATTACHMENTS TO

Notice of Removal

FILED ON 08/30/06 IN THE ABOVE CAPTIONED CASE HAVE BEEN
PLACED BEHIND THE RECORD

1 Box of State Court Pleadings located on Shelf near front
Distribution Area