
FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA

2006 OCT -3 AM 11: 31

SIGN_____
BY DEPUTY CLERK

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WALTER ALLEN, ET AL. | ) | CIVIL ACTION NO. 06-638-RET-CN |
| versus | ) | JUDGE TYSON |
| | ) | MAGISTRATE JUDGE NOLAND |
| ROLLINS ENVIRONMENTAL SERVICES, INC., ET AL. | ) | **FILED UNDER SEAL** |

## MEMORANDUM IN SUPPORT OF MOTION TO REMAND

MAY IT PLEASE THE COURT:

This action was originally brought in the 18th Judicial District Court for the Parish of Iberville, State of Louisiana. It was filed on April 4, 1996 against a single defendant, Rollins Environmental Services, Inc. ("Rollins") for damages arising out of the operation of a hazardous waste deep well injection facility located at 32655 Gracie Lane in Bayou Sorrel, Louisiana.

Over the next four years, and during the pendency of this suit, the ownership of that specific injection well facility changed hands from Rollins to its successor, Laidlaw Rnvironmental Services of Louisiana, Inc. ("Laidlaw") who, in turn, was succeeded by Safety-Kleen (Plaquemine), Inc. ("Safety-Kleen").

On June 9, 2000, Safety-Kleen filed Chapter II bankruptcy proceedings in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), case number 00-2303(PJW). The instant matter was stayed by operation of the automatic stay provisions of section 362(a) of the Bankruptcy Code.

-1-



On May 25, 2005, the Plaintiffs filed a *Second Supplemental and Amending Petition* naming Cyril Hinds ("Hinds"), Gerald I Hebert ("Hebert"), Clean Harbors, Inc. ("CHI"), Clean Harbors Plaquemine, LLC ("CHP"), Clean Harbors Environmental Services, Inc. ("CHESI"), Michael A. Sullivan ("Sullivan"), John C. Arbuthnot ("Arbuthnot") and Steadfast Insurance Company as defendants.

Dilatory and declinatory exceptions were filed by CHI, CHESI, CHP, Sullivan, and Arbuthnot. All exceptions were denied by the trial court, including the declinatory exception of *in personam* jurisdiction raised by CHI.

On June 1, 2006, the trial court held a hearing on the exceptions, and on June 9, 2006, Judge Best issued his *Ruling* wherein he found that the trial court has general personal jurisdiction over CHI based upon "the reasons stated in the Giauque 2 Ruling and for the reasons stated above *and* for the reasons stated in the Plaintiffs' briefs."

The matter referenced in the trial court's *Ruling* as "Giauque 2" is the citizen suit titled *Giauque, et al. v. Arbuthnot, et al.*, suit number 62,328 which is also pending in the 18th Judicial District Court before Judge Best. CHI is also a defendant in Giauque 2, and had raised the identical exception of lack of *in personam* jurisdiction in that matter. Giauque II and a similar citizen suit are discussed in more detail below.[1]

On August 31, 2006, one day after this case was improperly removed, the First Circuit denied the writ application filed by CHI.

---

[1]     The trial court in Giauque 2 denied CHI's exception and CHI applied for a supervisory writ to this Louisiana First Circuit Court of Appeal which was **DENIED** by the First Circuit on August 17, 2006. CHI has now filed a writ application with the Louisiana Supreme Court.

Case 3:06-cv-00638-RET-CN   Document 7-1   10/03/06   Page 2 of 49

Discovery was propounded upon Steadfast in the instant matter. Responses to that discovery were produced by Steadfast on May 23, 2006. A subpoena duces tecum was served on Steadfast in June 2006, and the deposition of the defendant was scheduled for August 17 and 18, 2006.

On or about June 25, 2006, the Plaintiffs and Defendants, including Steadfast, began preparations for mediation. *See,* **Exhibit 1**, June 27, 2006 correspondence from John W. Perry, Esq., and **Exhibit 2**, June 29, 2006 correspondence from J. Allen Harrell, Esq., counsel for Steadfast Insurance Company. The confidential mediation writing attached as **"Exhibit B"** to Steadfast's *Notice of Removal* was prepared solely for the purpose of that mediation, and at the request of the Mediator, John W. Perry, Esq.

Improperly using that confidential writing as evidence in this judicial proceeding, Steadfast removed this matter to this Honorable Court on August 30, 2006.

## The Citizen Suit Matters

The Honorable Magistrate Judge Noland is familiar with two matters previously before her that are somewhat related to the instant matter and involving many of these same Defendants. The matter of *Giauque, et al. v. Clean Harbors Plaquemine, LLC and Michael A. Sullivan*, docket number 03-958-D-M2, was a citizen suit brought against Clean Harbors Plaquemine ("CHP"), the operator of the Bayou Sorrel facility in question, and Michael A. Sullivan, the facility manager. The second citizen suit, *Giauque, et al. v. John C. Arbuthnot, et al.*, docket number 05-336-D-M2. Those actions are based upon violations of the Louisiana Environmental Quality Act ("LEQA") by those entities.

Defendants CHP, CHI, and CHESI removed those suits to this Court based, *inter alia*, upon the allegation that Sullivan and Arbuthnot were fraudulently joined in an attempt to defeat diversity.

-3-

The Plaintiffs filed Motions To Remand those matters that demonstrated Sullivan and Arbuthnot

had not been fraudulently joined. Both matters were remanded to State court.

## I. The Instant Matter Should Be Remanded

The instant matter should also be remanded to the 18th Judicial District Court because:

a.  The removing defendant, Steadfast Insurance Company ("Steadfast"), has violated statutory law, specifically LSA-R.S. 9:4112, by using confidential written communications and records made during mediation which are not subject to disclosure and may not be used as evidence in any judicial proceeding. *See* "Exhibit B" to August 30, 2006 *Notice of Removal.*

b.  The confidential mediation writing improperly introduced as evidence by the removing defendant does not make any demand or claim whatsoever regarding the amount in controversy.

c.  If it is somehow determined that the statutorily confidential writing is admissible, **AND** that the July 31, 2006 mediation writing qualifies as a good-faith, post-complaint demand letter that *"may be* 'other paper' under § 1446(b)," then the August 30, 2006 *Notice of Removal* is too late. The Plaintiffs' *Second Supplemental and Amending Petition* ("Petition") filed on May 25, 2005 named Steadfast as a defendant, and contained the same claims and details regarding the amount in controversy in the instant matter as does the confidential writing that was inappropriately attached as "Exhibit B" to the *Notice of Removal.* Steadfast was required to take any removal actions within 30 days of the service of the *Complaint*, or not later than June 30, 2005.

d.  Assuming, *arguendo,* that the removing defendant has somehow met its burden of proof regarding the amount in controversy, which is expressly denied, the conditions set forth in 28 U.S.C. §1332(d)(3) and § 1332(d)(4) require this Honorable Court to decline jurisdiction over this matter.

## LAW AND ARGUMENT

The burden of establishing federal jurisdiction is on the party seeking removal. *Wilson v.

Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Because removal raises

serious concerns with regard to the concepts of federalism and comity, removal jurisdiction is strictly

construed. *Willy v. Coastal Corp.*, 855 F.2d 1160 (5th Cir. 1988). The right to remove a case to

-4-

federal court is derived from Article III, Section 2 of the Constitution ("The Judicial Power shall extend to. . . controversies. . . between citizens of different States. . .") and vested in district courts by 28 U.S.C. § 1441.

Once a motion to remand has been filed, the burden is on the removing party to establish that federal jurisdiction exists. *De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1408 (5th Cir.1995). After removal of a case, the plaintiff may move for remand, and "[if] it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."28 U.S.C. § 1447(c). The Fifth Circuit has held that the removal statutes are to be construed "strictly against removal and for remand." *Eastus v. Blue Bell Creameries, L.P.,* 97 F.3d 100, 106 (5th Cir.1996); *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-109, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941).

A.      **The Confidential Mediation Writing Can Not Be Disclosed**

With limited exceptions, none of which are applicable in the instant matter, the Louisiana Mediation Act statutorily prohibits the disclosure or use as evidence of all oral and written communications and records made during mediation. *See,* LSA-R.S. 9:4112. Steadfast Insurance Company violated this statutory protection by attaching the July 31, 2006 confidential writing as **Exhibit B** to its *Notice of Removal*.

The opening paragraph of the July 31, 2006 writing clearly says:

"We look forward to meeting you on August 3 and 4 to discuss the upcoming **mediation** of these matters. **With that in mind**, we would like to provide you with an outline of the actions presented in these **matters**."

**Exhibit B** to *Notice of Removal*, p.1. Emphasis added.

The writing was obviously prepared for the mediation and about the mediation. Importantly, the majority of the remaining content of that confidential writing discusses matters other than the

-5-

instant matter. In addition to supporting the Plaintiffs' position that such writings are confidential, the confidential information regarding other matters in no way can or should be considered as a basis for quantifying the amount in controversy in the instant matter.

There is no published Louisiana law interpreting or applying the confidentiality provisions of the Louisiana Mediation Act. The Plaintiffs respectfully request that this Honorable Court apply the Act in a manner that will discourage others from using such confidential writings as evidence to "set forth for the first time that the amount in controversy in this action exceeds $5,000,000.00, exclusive of interests and costs..."

The express purpose of the Louisiana Mediation Act ("LMA") is to provide encouragement and support for the use of mediation to promote settlement of legal disputes. LSA-R.S. 9:4101. As a necessary feature of that encouragement and support, the LMA provides confidentiality to writings and communications made in connection with parties laying bare the strengths and vulnerabilities of their respective cases. Without confidentiality, there would be no frank discussions, which discourages and hampers mediation and is contrary to the purpose of the LMA.

Confidentiality is an essential component of the mediation process. Confidentiality encourages the parties to engage in a frank and candid discussion of the issues in dispute without fear that what is said will be used against them in later proceedings. Resolution almost always follows frank and candid discussion of the issues by well-informed parties. LSA-R.S. 9:4101, *et seq.. Also see,* 52 La. B. J. 283, *Confidentiality in Mediation*, copy attached hereto as **Exhibit 4**.

In a similar removal proceeding, the United States District Court for the Northern District of California granted a motion to strike a copy of the plaintiffs' mediation brief submitted in connection with a private mediation. The defendant attached the mediation brief to its supplemental

-6-

brief in support of its position on the amount in controversy. The court found the defendant relied on information contained in the mediation brief to calculate the estimated attorney fee's attributed to each class member. However, the federal district court held that, because the plaintiffs' mediation brief was originally submitted under a confidentiality agreement and because mediation communications are confidential under California state law, the court granted the motion to strike and the court did not consider the mediation brief or any reference made by the defendants to that exhibit. *Johnson v. America Online, Inc.*, 280 F.Supp.2d 1018, (N.D.Cal.,2003).

By way of analogy, this United States District Court for the Middle District of Louisiana has its own Mediation Program implemented pursuant to Rule 16.3.1M, Part "E," the *Rules for Alternative Dispute Resolution in the Middle District of Louisiana*. Pursuant to this local rule, there are confidentiality provisions associated with the discussions and writings made in connection with this alternative dispute resolution:

> (d) *Submissions.* The mediator shall communicate with all counsel of record and unrepresented parties, within a reasonable time prior to the mediation conference, in order to discuss what documentation, if any, will be needed to conduct the mediation. The mediator shall set appropriate deadlines for the submission of this material and the participants shall be responsible for the timely submission of this material to the mediator. **None of the material submitted to the mediator shall be filed in the record, but shall either be destroyed or returned to the participants after completion of the mediation, at the discretion of the participants. The mediator may accept documents or memoranda on a confidential basis, and not served on the other parties, indicating strengths and weaknesses in that party's case and the range in which that party proposes settlement. Memoranda so submitted shall be treated with confidentiality by the mediator.**

> (e) *Hold Harmless and Confidentiality Agreement.* **All participants shall be required to execute a** Hold Harmless and **Confidentiality Agreement** with the mediator immediately prior to the mediation conference. That document is published herein as Exhibit A to these rules. This rule does not preclude a report to or any inquiry by the ADR Clerk or Magistrate Judge pursuant to ADR LR C-7 regarding a possible violation of the ADR Local Rules.

Case 3:06-cv-00638-RET-CN    Document 7-1    10/03/06    Page 7 of 49

U.S.Dist.Ct.Rules D.La., MD-ADR Part E(3), *Mandatory Guidelines for Mediation.*   Emphasis added.

The confidential writing at issue in the instant matter was submitted to Steadfast **AND** the Mediator at his request.   *See* **Exhibit 1** and **Exhibit 3**, June 27, 2006 and July 31, 2006 correspondence from John S. Perry, Esq. requesting confidential position papers to be submitted on a confidential basis.   The July 31, 2006 writing attached by Steadfast as **Exhibit B** to its *Notice of Removal* was prepared and submitted pursuant to, and with the expectation of, confidentiality provided by LSA-R.S. 9:4112 and the Mediator's correspondence.   There has been no waiver by the Plaintiffs of their expectation of and insistence on confidentiality.   Therefore, the writing can not be used as evidence of anything in this judicial proceeding, including evidence of the amount in controversy.

**B.     The Confidential Mediation Writing Does Not Set Forth an Amount in Controversy**

When a matter is removed pursuant to the second paragraph of § 1446(b), the information supporting removal in an amended pleading, motion, order or other paper must be **"unequivocally clear and certain"** to begin tolling the thirty (30) day time limit. *Bosky v. Kroger Texas, LP,* 288 F.3d 208, 211 (5 Cir.2002). Emphasis added.   The requirement that grounds for removal be "unequivocally clear and certain" is intended to promote judicial economy and reduce protective removals by defendants faced with an equivocal record. *Id.*   It is also meant to discourage removals before their factual basis can be proven by a preponderance of the evidence. *Id.*   Finally, a court must always keep in mind removal statutes are to be construed strictly against removal and for remand. *Id.*

Because it is so brief, the content of the confidential writing is presented here in its entirety for convenience of reference and review by the Court, to wit:

**"Walter Allen Class Action**

*TEXT REDACTED AND SUBMITTED UNDER SEAL*

As this Honorable Court can easily see, there are no "demands" whatsoever made by the Plaintiffs, there are no specific values assigned to the Plaintiffs' claims, and there is certainly no statement of an amount in controversy.

In fact, the only monetary amount mentioned in this text is that part which says that the Louisiana Supreme Court in the published Louisiana *Corbello* decision had upheld a jury award of thirty three million ($33,000,000.00) dollars for restoration costs to land. This statement was made in the context of demonstrating that such issues are unpredictable and the trial court has much discretion in determining these amounts. This statement does not in any way make any demand, nor does it "set forth for the first time the amount in controversy in this action exceeds $5,000,000.00, exclusive of interests and costs." *Notice of Removal*, ¶10.

While the United States Fifth Circuit Court of Appeals has held that a good-faith, post-complaint "**demand"** letter *"may be* 'other paper' under § 1446(b)," the court did not hold that such a letter necessarily *is* "other paper." *See*, *Addo v. Globe Life & Accident Insurance Company*, 230 F.3d 759 (5th Cir.2000). Emphasis added. The Plaintiffs respectfully aver that the use of a statutorily confidential writing that is not a "demand" letter, is not "other paper" under § 1446(b), and should be stricken from the record.

-9-

**C.    The Plaintiffs' *Second Supplemental and Amending Petition* Provided the Same Claims and Details Made in the Confidential Writing**

If it is somehow determined that the statutorily confidential writing is admissible, **AND** that the July 31, 2006 confidential mediation writing qualifies as a good-faith, post-complaint "demand" letter that *"may be* 'other paper' under § 1446(b)*,"* then the August 30, 2006 *Notice of Removal* is untimely.  The Plaintiffs' *Second Supplemental and Amending Petition* ("Petition") filed on May 25, 2005 named Steadfast as a defendant, and contained the same claims and details regarding the amount in controversy in the instant matter as does the confidential writing that was inappropriately attached as **Exhibit B** to the *Notice of Removal*.  Steadfast was required to take any removal actions within 30 days of the service of the *Complaint*, or not later than June 30, 2005.

A paragraph-by-paragraph comparison of the information contained in the confidential writing and the Petition proves without question that Steadfast was required to file its removal over one year ago.

The first "Allen Litigation" paragraph of the confidential mediation writing says:


*TEXT REDACTED AND SUBMITTED UNDER SEAL*


Comparison of the emphasized text from the confidential writing with paragraphs 66 through 69 of the Petition sufficiently demonstrates that Steadfast was on notice of these claims in May 2005:

"66.

Plaintiffs also make a claim, individually and on behalf of the putative class, against Defendants CHP, CHI, Hinds and Hebert for **trespass** resulting from the movement of injected toxic and hazardous waste **beneath property owned by the Plaintiffs and putative class members**.

-10-

67.

**Each day** that aqueous waste is injected into the CHP injection well, **the size of the waste plume**, sometimes referred to as the **waste front radius**, increases and **trespasses** beneath land owned by the Plaintiffs and putative class members, in a pattern projected by these Defendants' own engineers **that will ultimately reach as far as seven (7) miles to the south and southwest of the injection well**.

68.

In a report prepared for **former site owner**, Rollins Environmental Services of Louisiana, Inc., and previously submitted into the record of this proceeding, **Atwater Engineers informed Rollins that the waste plume was already located beyond the property owned by the injection well facility, and would continue to grow with continued use of the well**. **CHI and CHP** began operating this same injection well in September 2002 and have since injected millions of gallons of hazardous and toxic waste into the waste plume, and **has caused the plume to increase in size**.

69.

Plaintiffs, on behalf of themselves and all others similarly situated, pray the Court order Defendants CHI, CHP, Hinds and Hebert **to establish a fund to pay royalties and damages** to the class for the **trespass** upon their land by these toxic and hazardous wastes, and **for the diminution in the value and stigma now attached to their land** as a result of the actions of these Defendants."

**Exhibit 6**, *Second Supplemental and Amending Petition*, p.6.  Emphasis added.

The second "Allen Litigation" paragraph in the confidential writing says:

### *TEXT REDACTED AND SUBMITTED UNDER SEAL*

Again, paragraph number 67 in the Petition provided the same information with more specifics, to wit:

"67.

Each day that aqueous waste is injected into the CHP injection well, the size of the waste plume, sometimes referred to as the waste front radius, increases and

-11-

trespasses beneath land owned by the Plaintiffs and putative class members, **in a pattern projected by these Defendants' own engineers that will ultimately reach as far as seven (7) miles to the south and southwest of the injection well**"

**Exhibit 6**, p.6. Emphasis added.

The third "Allen Litigation" paragraph in the confidential writing says:

*TEXT REDACTED AND SUBMITTED UNDER SEAL*

That statement in no way quantifies or proves the amount of annual gross revenue of the injection well nor the royalty amounts actually received by the Schwings for the past 4 years. Moreover, it does not say that a like amount is demanded on behalf of each individual class member as opposed to only a proportionate share of the royalty already established. The information supporting removal in "other paper" must be **"unequivocally clear and certain"** to begin tolling the thirty (30) day time limit. *Bosky v. Kroger Texas, LP,* 288 F.3d 208, 211 (5 Cir.2002). Emphasis added. Paragraph number 69 in the Petition provided the same claim and information, to wit:

"69.

Plaintiffs, on behalf of themselves and all others similarly situated, pray the Court order Defendants CHI, CHP, Hinds and Hebert **to establish a fund to pay royalties** and damages **to the class for the trespass** upon their land by these toxic and hazardous wastes, and **for the diminution in the value and stigma now attached to their land** as a result of the actions of these Defendants."

**Exhibit 6**, p.6. Emphasis added.

The fourth "Allen Litigation" paragraph in the confidential writing says:

*TEXT REDACTED AND SUBMITTED UNDER SEAL*

That paragraph is merely a summary statement of the claims and allegations already contained and detailed throughout the Plaintiffs' Petition. Below are several representative samples of these claims originally found in the Petition:

-12-

"45.

As a result of Sullivan's ongoing failure, actions and omissions, chemical constituents and contamination, including the isomers of hexachlorocyclohexane, are still migrating at and from this facility into ground and surface waters of the State of Louisiana, and **impacting and threatening the property and lives of the Plaintiffs through contamination of a drinking water aquifer beneath their land**. These are continuing and threatened actions and omissions by Sullivan.

* * * * * * * *

49.

As a result of Arbuthnot's actions and omissions, chemical constituents and contamination, including the isomers of hexachlorocyclohexane, are still migrating at and from this facility into ground and surface waters of the State of Louisiana, and **impacting and threatening the property and lives of the Plaintiffs through contamination of a drinking water aquifer beneath their land**. These are continuing and threatened actions and omissions by Arbuthont.

* * * * * * * *

52.

The scientists and experts were able to collect a sample on May 27, 2004 which ultimately **demonstrated the presence of the chemical Toluene and the insecticide Aldrin in the flood waters that inundated many homes and property in the community of Bayou Sorrel for several weeks thereafter**. These pollutants were released from the buried surface impoundments at the Clean Harbors facility and have caused the contamination of land and property belonging to the putative class members.

* * * * * * * *

54.

As a result of CHP's ongoing failure, actions and omissions, chemical constituents and contaminants, including the isomers of hexachlorocyclohexane, are still migrating at and from this facility into ground and surface waters of the State of Louisiana, and **impacting and threatening the property and lives of the Plaintiffs through contamination of a drinking water aquifer beneath their land**. These are continuing and threatened actions and omissions by CHP.

-13-

\* \* \* \* \* \* \* \*

58.

As a result of CHI's ongoing failure, actions and omissions, chemical constituents and contamination, including toluene, aldrin, and the isomers of hexachlorocyclohexane, are still migrating at and from this facility into ground and surface waters of the State of Louisiana, and **impacting and threatening the property and lives of the Plaintiffs through contamination of a drinking water aquifer beneath their land**. These are continuing and threatened actions and omissions by CHI.

\* \* \* \* \* \* \* \*

60.

During the years of 1977 and 1978, CLAW, through Hinds and Hebert, constructed and operated several storage pits at the deep well injection facility where hazardous and toxic waste was improperly stored and/or disposed. Wastes shipped by tank truck were routinely emptied into unpermitted pits at the well site to allegedly allow suspended solids to settle out of the liquids in order to prevent structural and operational damage to the well. These illegal pits were of poor design and were constructed in a stream bed with extremely permeable and silty soils. **Substantial quantities of hazardous and toxic wastes placed into these pits have ultimately been discharged into the subsurface soils and ground water where they are presently located and create an imminent and substantial endangerment to the environment**.

61.

Defendants Hinds, Hebert and CLAW constructed and utilized a polyvinyl chloride ("PVC") plastic pipeline to transfer waste from a barge unloading area to the injection well located at a distance of some one and one-half (1 ½ ) miles away. The PVC pipeline was located in sensitive environmental areas including swamp and wetland areas. **The PVC pipeline ruptured, collapsed and otherwise broke apart on numerous occasions resulting in illegal discharges of liquid waste to the surrounding soil, surface waters and ground waters resulting in extensive subsurface contamination and pollution, as well as damage to the natural resources. That contamination and pollution continues to exist and migrate at a significant depth below the land surface**.

\* \* \* \* \* \* \* \*

-14-

64.

The Plaintiffs have conducted investigation, testing and monitoring and have discovered evidence that the chemical contamination discharged from the concealed 5 pits, a concealed storage tank drainage ditch, and along the pipeline corridor, have and threaten to impact usable groundwater in the Community of Bayou Sorrel. The top of the Plaquemine Aquifer, a usable groundwater source, is located at one hundred (100) feet below land surface of the pits, ditch and pipeline. Soil and groundwater borings have provided evidence that the chemical contamination has been found at depths up to fifty (50) feet below the land surface. **Drinking water well samples have indicated the presence of several chemical contaminants that were disposed in the pits and tank drainage ditch, as well as chemical contaminants that leaked from the barge unloading pipeline**.

65.

**The Plaintiffs have and own land above this same usable groundwater source, and have and own water wells completed in that source. Engineering studies have shown that the ground water flow from the contaminated areas at the injection well site are seasonally impacted by the flow of the Mound Ditch and Bayou Sorrel which flow in the direction, and on the border, of the Plaintiffs' property. The Plaintiffs are making a claim herein to recover damages for the evaluation and remediation of any contamination or pollution impacting or threatening usable ground water**. As such, proper notice of this claim is being provided to the Louisiana Department of Environmental Quality and the Louisiana Department of Natural Resources pursuant to LSA-R.S. 30:2015.1.

**Exhibit 6**. Emphasis added.

Certainly, the information contained within the four corners of the *Second Supplemental and Amending Petition* provided far greater detail regarding damages and the potential amount in controversy than does the summary paragraph in the confidential mediation writing.

Finally, the fifth "Allen Litigation" paragraph in the confidential writing says:

*TEXT REDACTED AND SUBMITTED UNDER SEAL*

The Plaintiffs' Petition specifically pleaded this *Corbello* claim in paragraph 65 where it clearly placed Steadfast on notice of the potential amount in controversy:

-15-

"65.

> The Plaintiffs have and own land above this same usable groundwater source, and have and own water wells completed in that source. Engineering studies have shown that the ground water flow from the contaminated areas at the injection well site are seasonally impacted by the flow of the Mound Ditch and Bayou Sorrel which flow in the direction, and on the border, of the Plaintiffs' property. The Plaintiffs are making a claim herein to recover damages for the evaluation and remediation of any contamination or pollution impacting or threatening usable ground water. **As such, proper notice of this claim is being provided to the Louisiana Department of Environmental Quality and the Louisiana Department of Natural Resources pursuant to LSA-R.S. 30:2015.1**."

**Exhibit 6**, p.6. Emphasis added.

In 2003 the Louisiana legislature passed the "Ground Water Remediation Statute," LSA-R.S. 30:2015.1 (2003 La. Acts No. 1166, La. R.S. 2015.1: 30 (2003)) in response to the Louisiana Supreme Court decision in *Corbello v. Iowa Production*, 2002-0826 (La.2/25/03), 850 So.2d 686 which allowed for recovery of remediation and restoration costs even if those costs exceeded the fair market value of the contaminated property. It has been dubbed the *Corbello* statute. The statute allows regulatory agencies, such as the Louisiana Department of Environmental Quality, to intervene in the proceedings and requires the damages for remediation of contamination or pollution to be paid into the registry of the court. The statute also requires any money received for restoration for groundwater remediation to be placed in a fund for the restoration efforts.

It is respectfully averred that Steadfast Insurance Company is knowledgeable of the potential costs and expenses associated with *Corbello* statute claims. Steadfast has issued a *Hazardous Waste Facility Certificate of Liability Insurance* to the Louisiana Department of Environmental Quality specifically covering bodily injury and property damage in connection with Clean Harbors Plaquemine's obligation to demonstrate financial responsibility under Louisiana's environmental

-16-

regulations, specifically LAC 33:V.3715 and 4411. *See,* **Exhibit 7.**

If, ***but only if,*** the Court is willing to read the sentence ***(TEXT REDACTED AND SUBMITTED UNDER SEAL)*** in a vacuum, can it be said that it is a demand to settle and, thus equates to a statement of the amount in controversy. The Plaintiffs contend, however, that as a matter of law the confidential writing can neither be read nor analyzed that way. When read *in pari materia* with all the facts and circumstances of the case, the confidential writing is absolutely nothing more than a summary of the same claims and information found in the Petition.

Under 28 U.S.C. § 1446, which sets forth the general procedure for removal, a determination of whether a defendant timely removed a case is essentially a two-step process. *See Chapman v. Powermatic, Inc.,* 969 F.2d 160, 161 (5th Cir.1992). First, if the case stated by the initial pleading is removable, a defendant has thirty days from receipt of the initial pleading to file a notice of removal. *See* 28 U.S.C. 1446(b); *Chapman,* 969 F.2d at 161. Such is the case here. Based upon the detailed and explicit language of the Plaintiffs' Original and Supplemental Petitions, Steadfast had sufficient information regarding the amount in controversy when the Petition was served upon it in May 2005. Therefore, the removal of this action based upon the July 31, 2006 confidential writing providing the same information is clearly untimely.

Removal statutes are to be construed strictly against removal and for remand and a failure to timely file a notice of removal is a defect that requires remand to state court. *Delaney v. Viking Freight, Inc.,* 41 F.Supp.2d 672, 674 (E.D.Tex.1999) (quoting *Eastus v. Blue Bell Creameries, L.P.,* 97 F.3d 100, 106 (5th Cir.1996) (quotes omitted), and citing *Royal v. State Farm Fire & Cas. Co.,* 685 F.2d 124, 127 (5th Cir.1982)).

-17-

**D.     The Court Should Decline Jurisdiction Under The CAFA**

Assuming, *arguendo,* that Steadfast has somehow met its burden of proof regarding the

amount in controversy, which is expressly denied, the conditions set forth in 28 U.S.C. §1332(d)(3)

and § 1332(d)(4) require this Honorable Court to decline jurisdiction over this matter.

The Plaintiffs will now address each individual criteria set forth by the CAFA for district

courts to decline jurisdiction.

> **28 U.S.C. §1332(d)(3) and its subparts:**

> **(3)** A district court may, in the interests of justice and looking at the
> totality of the circumstances, decline to exercise jurisdiction under
> paragraph (2) over a class action in which greater than one-third but
> less than two-thirds of the members of all proposed plaintiff classes
> in the aggregate and the primary defendants are citizens of the State
> in which the action was originally filed based on consideration of--

> **(A)** *whether the claims asserted involve matters of national or
> interstate interest;*

This is a class action brought entirely on behalf of Louisiana residents for contamination

caused by a single injection well facility located in Iberville Parish, Louisiana.  **Exhibit 5,** *Petition*

*for Damages,* ¶¶1, 6, 7, 8, 11, 23, 24, 28, and 38; **Exhibit 6,** ¶¶ 40-71.  There are no national or

international interests affected by this matter.

> **(B)** *whether the claims asserted will be governed by laws of the State*
> *in which the action was originally filed or by the laws of other States;*

This action was brought specifically pursuant to Louisiana law and absolutely no federal law

is implicated.  **Exhibit 5,** ¶¶1, 20, 22, 27, 33, 34, and 38, ; **Exhibit 6,** ¶¶65, 70, and 71.

> **(C)** *whether the class action has been pleaded in a manner that seeks*
> *to avoid Federal jurisdiction;*

None of the pleadings herein were designed in a way to avoid federal jurisdiction.  In fact,

-18-

the original Petition for Damages specifically named only one defendant - Rollins Environmental Services, a Delaware corporation. **Exhibit 5, ¶3(1)**. No removal was attempted by Rollins or any other defendant until now, ten (10) years after the suit was filed.

> *(D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;*

There exists a distinct nexus with the class members and the alleged harm and several of the defendants. The injection well is located in Bayou Sorrel, Louisiana, all of the harm was caused in Bayou Sorrel, Louisiana, and several of the defendants are Louisiana residents. In fact, two of the defendants are current and former employees of the entities owning and operating the injection well. **Exhibit 6, ¶¶40-49. Moreover, in the citizen suit matters discussed herein above, this Honorable Court has already found that neither of those Louisiana residents (Sullivan and Arbuthnot) were fraudulently joined**. Additionally, two other defendants were the original owners of the injection well and facilities specifically identified as causing the harm complained of by the Plaintiffs. **Exhibit 6, ¶¶59-63.**

> *(E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and*

Again, this class consists entirely of Louisiana residents. There are no class members from any State other than Louisiana.

> *(F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.*

Case 3:06-cv-00638-RET-CN   Document 7-1   10/03/06   Page 19 of 49

There is no evidence of any class actions filed in the 3-year period preceding the filing of this class action asserting the same or similar claims on behalf of the same or other persons.

Therefore, it is respectfully submitted this Honorable Court should decline jurisdiction over this matter for all the reasons set forth in this Memorandum.

**28 U.S.C. §1332(d)(4) and its subparts:**

**(4)** A district court **shall** decline to exercise jurisdiction under paragraph (2)--

**(A)(i)** over a class action in which--

> **(I)** *greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;*

As demonstrated herein, all members of the putative class are Louisiana residents. There are no putative class members from any other State

> **(II)** *at least 1 defendant is a defendant–*
>
> **(aa)** *from whom significant relief is sought by members of the plaintiff class;*
>
> **(bb)** *whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and*
>
> **(cc)** *who is a citizen of the State in which the action was originally filed; and*
>
> **(III)** *principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and*
>
> **(ii)** *during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons*; or

-20-

As demonstrated above, there exists a distinct nexus with the class members and the alleged harm and several of the defendants. The injection well is located in Bayou Sorrel, Louisiana, all of the harm was caused in Bayou Sorrel, Louisiana, and several of the defendants are Louisiana residents. Two of the defendants from whom significant relief is sought are current and former employees of the entities owning and operating the injection well. **Exhibit 6**, ¶¶40-49. Additionally, two other defendants from whom significant relief is sought were the original owners of the injection well and facilities specifically identified as causing the harm complained of by the Plaintiffs. **Exhibit 6**, ¶¶59-63. There are no class actions filed in the 3-year period preceding this one.

> **(B)** *two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.*

The totality of the putative class members are citizens of Louisiana. No less than one-half of the primary defendants are also residents of Louisiana.

Based upon the foregoing, this Honorable Court should and must decline jurisdiction over the instant matter.

## CONCLUSION

For the reasons stated herein, this case, which is based solely upon state law claims, should be remanded to the 18th Judicial District Court and the Defendants should be taxed with the costs of the Plaintiffs for wrongfully removing this case.

-21-

Respectfully submitted:

By: _____

RICHARD J. DODSON (04982)
KENNETH H. HOOKS, III
**DODSON & HOOKS (APLC)**
One Maritime Centre
17405 Perkins Road
Baton Rouge, La. 70810
Tel: (225)756-0222

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record to these proceedings by placing a copy of same in the United States mail, postage prepaid and properly addressed this 3rd day of October, 2006.

_____
Richard J. Dodson

-22-

RECEIVED

NOV 0 6 2006

U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DEPUTY CLERK

# PERRY, DAMPF, WATTS AND ASSOCIATES

### A Professional Mediation and Arbitration Company

721 Government Street, Suite 102  Baton Rouge, LA 70802
Phone  (225) 408-2775 • Fax  (225) 389-9859
liz@perrywatts.com

CV-638-RET-CN

June 27, 2006

<u>VIA FACSIMILE AND U.S. MAIL</u>

Mr. Kenneth Hooks, III
Dodson & Hooks
17405 Perkins Road
Baton Rouge, LA  70810

Mr. F. Barry Marionneaux
Marionneaux & Marionneaux
23615 Railroad Avenue
Plaquemine, LA  70764

Mr. Eric E. Jarrell
King LeBlanc & Bland
201 St. Charles Avenue, Suite 3800
New Orleans, LA  70170

Mr. Whitton E. Norris, III
Davis, Malm & Dagostine
One Boston Place
201 Washington Street
Boston, MA  02108

Re:  *Terry Giauque, et al v. Clean Harbors (Plaquemine), L.L.C., et al*
     *Terry Giauque, et al v. John C. Arbuthnot, et al*
     *Walter Allen, et al v. Rollins Environmental Services, Inc.*
     *United States of America, el rel. ,Claude I. Duncan v. Safety-Kleen*
     *(Plaquemine), Inc., et al*
     Our Reference No. 99-5.2494

Gentlemen:

This will confirm that the mediation of this matter has been scheduled for **Saturday, July 8, 2006.** The mediation will take place **at 2:00 p.m. at Mr. Perry's law firm office (2141 Quail Run Drive, Baton Rouge, LA).** Please note it is our standard practice to receive from each of the participating parties a brief and confidential position paper. We ask that it be in letter form, not to exceed three to four pages, although relevant documents can be attached for review. We frequently receive and John is more than happy to review more voluminous materials, as the case warrants, and we will leave that to your discretion. The objective is to have everyone make whatever offerings or submissions you deem appropriate on a confidential basis, submitted to the mediator only, in order to begin the mediation in a very substantive fashion.

Please note John receives all position papers and other materials in advance of the mediation (preferably 5-7 days prior to the above mediation date) at the above-referenced Perry, Dampf, Watts & Associates address or fax number.

Thank you for choosing Perry, Dampf, Watts & Associates for your mediation. Should you need anything further, please do not hesitate to call.

EXHIBIT
1

Counsel
June 27, 2006
Page 2


With kindest regards, I remain

Sincerely yours,

Liz Melancon, Mediation Assistant to
John W. Perry, Jr.
:lm

# PHELPS DUNBAR LLP
### COUNSELORS AT LAW

New Orleans, LA

Baton Rouge, LA

Houston, TX

London, England

J. ALAN HARRELL
Partner
harrells@phelps.com

City Plaza • 445 North Boulevard • Suite 701
Baton Rouge, Louisiana 70802-5707
P. O. Box 4412
Baton Rouge, Louisiana 70821-4412
(225) 346-0285
Fax (225) 381-9197

www.phelpsdunbar.com

Jackson, MS

Tupelo, MS

Gulfport, MS

Tampa, FL

19773-27

June 29, 2006

**VIA FACSIMILE AND MAIL**

Kenneth H. Hooks, III
Dodson & Hooks, A P.L.C.
One Maritime Center
17405 Perkins Road
Baton Rouge, LA 70810

      Re:   *Walter Allen, et al. v. Rollins Environmental Services, Inc.*, Suit No. 47,254, Div.
            "A", 18th JDC, Parish of Iberville, State of Louisiana

Dear Kenny:

    This letter confirms our telephone conversation yesterday during which you agreed that
the Article 1442 Deposition of Steadfast and the related Deposition Subpoena and Subpoena
Duces Tecum will be continued from July 7, 2006 to August 18, 2006. We also remain available
to use August 17 (or 18) as a mediation date. Thank you.

           Very truly yours,

           PHELPS DUNBAR LLP

           J. Alan Harrell

cc:   Eric Jarrell
       Barry Marionneaux
       Marshall Redmon

EXHIBIT
2

# PERRY, DAMPF, WATTS AND ASSOCIATES

### A Professional Mediation and Arbitration Company

721 Government Street, Suite 102  Baton Rouge, LA 70802
Phone  (225) 408-2775 • Fax  (225) 389-9859
liz@perrywatts.com

July 31, 2006

<u>VIA FACSIMILE AND U.S. MAIL</u>

Mr. Kenneth Hooks, III
Dodson & Hooks
17405 Perkins Road
Baton Rouge, LA  70810

Mr. Eric E. Jarrell
King LeBlanc & Bland
201 St. Charles Avenue, Suite 3800
New Orleans, LA  70170

Mr. J. Alan Harrell
Phelps Dunbar, L.L.P.
Post Office Box 4412
Baton Rouge, LA  70821-4412

Mr. F. Barry Marionneaux
Marionneaux & Marionneaux
23615 Railroad Avenue
Plaquemine, LA  70764

Mr. Whitton E. Norris, III
Davis, Malm & Dagostine
One Boston Place
201 Washington Street
Boston, MA  02108

Mr. Thomas D. Gildersleeve
Taylor, Porter, Brooks & Phillips,
  L.L.P.
Post Office Box 2471
Baton Rouge, LA  70821

Re:   *Terry Giauque, et al v. Clean Harbors (Plaquemine), L.L.C., et al*
      *Terry Giauque, et al v. John C. Arbuthnot, et al*
      *Walter Allen, et al v. Rollins Environmental Services, Inc.*
      *United States of America, el rel. ,Claude I. Duncan v. Safety-Kleen*
      *(Plaquemine), Inc., et al*
      Our Reference No. 99-5.2494

Gentlemen:

This will confirm that the mediation of this matter has been re-scheduled for August 18-19,
**2006.** The mediation will take place at **2:00 p.m.** at the law office of Dodson & Hooks (17405
**Perkins Road, Baton Rouge, LA**). Per my earlier letter, please note it is our standard practice
to receive from each of the participating parties a brief and confidential position paper. We ask
that it be in letter form, not to exceed three to four pages, although relevant documents can be
attached for review. We frequently receive and John is more than happy to review more
voluminous materials, as the case warrants, and we will leave that to your discretion. The
objective is to have everyone make whatever offerings or submissions you deem appropriate on a
confidential basis, submitted to the mediator only, in order to begin the mediation in a very
substantive fashion.

Blumberg No. 5116

EXHIBIT
3

Please note John receives all position papers and other materials in advance of the mediation (preferably 5-7 days prior to the above mediation date) at the above-referenced Perry, Dampf, Watts & Associates address or fax number.

Thank you for choosing Perry, Dampf, Watts & Associates for your mediation. Should you need anything further, please do not hesitate to call.

With kindest regards, I remain

Sincerely yours,

Liz Melancon, Mediation Assistant to
John W. Perry, Jr.
:lm

52 La. B.J. 283

Louisiana Bar Journal
December, 2004/January, 2005

Department
Recent Development
Administrative to Trust, Estate

**\*283** ALTERNATIVE DISPUTE RESOLUTION

Elizabeth W. Middleton
Chair, LSBA Alternative Dispute Resolution Section P.O. Box 11796 Alexandria,
LA 71315-1796

Dalton Roberts Ross
Member, LSBA Alternative Dispute Resolution Section P.O. Box 52475 Shreveport,
LA 71135-2475

Copyright © 2004 by Louisiana State Bar Association; Elizabeth W. Middleton,
Dalton Roberts Ross

Confidentiality in Mediation

Confidentiality is an essential component of the mediation process. Confidentiality encourages the parties to engage in a frank and candid discussion of the issues in dispute without fear that what is said will be used against them in later proceedings. Resolution almost always follows frank and candid discussion of the issues by well-informed parties.

The Louisiana Mediation Act, La. R.S. 9:4101, et seq., provides for the confidentiality of all records and oral and written communications made during mediation. La. R.S. 9:4112.

Although confidentiality issues occasionally arise at mediation, or following mediation, there are not yet any reported decisions in Louisiana jurisprudence where a party has tested the confidentiality of the process.

In Cleveland Construction v. Whitehouse Hotel Limited Partnership, (E.D. La. 2/25/04)(not reported in F. Supp. 2d), the court dealt with the confidentiality of a settlement agreement. Magistrate Judge Wilkinson held that a settlement agreement arising out of prior litigation with a nonparty to the instant suit, but involving the same construction project, was discoverable. He noted that the Louisiana Mediation Act only applies to "all oral and written communications made during mediation" and that the nonparty seeking to quash the subpoena "has not borne its burden of showing specifically, rather than making a conclusory statement, that the settlement agreement falls within this definition." Magistrate Judge Wilkinson further noted that:

the Mediation Act does not impose an absolute bar against discovery of documents otherwise protected by its provision. The statute provides that, if it "conflicts with other legal requirements for disclosure of communications or materials, the issue of confidentiality may be presented to the court having jurisdiction of the proceedings to determine" whether, under the circumstances, the information is subject to disclosure. La. Rev. Stat. § 9:4112(E).

In Rojas v. Superior Court of Los Angeles County, 93 P.3d 260 (Cal. 2004), the California Supreme Court recently addressed the issue of whether photographs, witness statements, test data and other documents prepared for mediation between an apartment complex owner and the contractors and subcontractors it sued could be discovered in subsequent litigation brought by tenants of the apartment complex against the owner and other parties, including one of the same defendant contractors. The court held that the photographs, witness statements and recorded analyses or reports regarding raw test data were writings as defined by statute, and therefore protected from discovery by the statutory confidentiality provision protecting writings "prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation." West's Ann. Cal. Evid. Code §§ 1119(b), 1120. The court further held that it could not imply any additional exemption to allow discovery of the requested items for "good cause" given the lack of legislative intent to support a good cause exception to the confidentiality provision.

In Rojas, supra, the litigation was brought in 1999 by several hundred tenants against an apartment complex owner, **\*284** the 1979 Ehrlich Investment Trust through its trustee, Julie Coffin, and other

EXHIBIT

defendants, including Deco Construction Corp. The tenants alleged that defective construction had allowed water to circulate and microbes to infest the complex and, consequently, had caused them to suffer numerous health problems. They further alleged that all of the defendants had conspired to conceal the defects. Rojas, 93 P.3d at 262. The tenants sought to compel production of photographs and other evidence that had been created for mediation purposes in the earlier litigation between Coffin and Deco Construction Corp. and other defendants. (Several months prior to institution of the suit in Rojas, Coffin had settled through mediation the suit she originally brought in 1996 against the contractors and subcontractors, including Deco. In that first suit, Coffin alleged that leakage due to construction defects had produced toxic molds and other microbes on the property. Id. The court in that suit had issued a comprehensive case-management order that provided that:

(e)vidence of anything said or any admission made by attorneys, parties, principals, consultants, or others in the course of any "mediation proceeding" ... and any document prepared for the purpose of, or in the course of, or pursuant to any mediation proceeding shall be deemed privileged pursuant to Evidence Code § 1119 and shall not be admissible as evidence at trial or for any purpose prior to trial. Id.

In late 1998, one of the buildings at the complex was closed for abatement, including demolition and replacement of drywall and ceilings, application of antimicrobial agents and plumbing repairs. Id. The tenants indicated that they needed the photographs and that there was no other evidence of the conditions as they were at that time. The defendants indicated the photographs were created for mediation purposes. Id. at 263.

The trial court focused on the photographs and held that they were clearly protected by the mediation privilege. The court of appeal reversed, stating that the statute did not protect "pure evidence" but only protected the "substance of mediation, i.e., the negotiations, communications, admissions, and discussions designed to reach a resolution of the dispute at hand." Id. at 264. The court of appeal likened the privilege to the work-product privilege and classified as "non-derivative" material such as the raw test data, photographs and witness statements (as opposed to material solely reflecting an attorney's "impressions, conclusions, opinions, or legal research"). As non-derivative material was only qualifiedly protected, the court of appeal held the photographs were discoverable upon showing of good cause and ordered the trial court to vacate its order denying the tenants' motion to compel and conduct an in camera review of the requested documents. Id. The court of appeal further relied upon § 1120, which provides that:

[e]vidence otherwise admissible or subject to discovery outside of a mediation ... shall not be or become inadmissible or protected from disclosure solely by reason of its introduction or use in a mediation ....
Id.

The California Supreme Court reversed the court of appeal and agreed with the trial court that the requested photographs and evidence were protected by the mediation confidentiality provisions. The court stated that photographs and witness statements qualified as writings and that if: "prepared for the purpose of, in the course of, or pursuant to, a mediation," then they are not "admissible or subject to discovery and [their] disclosure ... shall not be compelled."

The Supreme Court further stated that the court of appeal was correct that "raw test data" are never protected by § 1119, but that recorded analyses of samples, or reports describing the existence or amount of mold spores in a sample, were also writings protected by the mediation privilege if "'prepared for the purpose of, in the course of, or pursuant to, a mediation.'" The court held that § 1120 did not support a contrary conclusion, but simply provided that "a party cannot secure protection for a writing ... that was not 'prepared for the purpose of, in the course of, or pursuant to, a mediation.'" Id. at 266. In rejecting the court of appeal's theory in borrowing from the work-product discovery principles, the court discussed at length the legislative history behind the mediation privilege and noted the lack of a good-cause exception similar to that contained in the statute governing discovery of work product where a denial *285 would unfairly prejudice the party's claim or defense. Id. at 270.

Finally, the court agreed with the trial court's observation that:

the mediation privilege is an important one, and if courts start dispensing with it by using the ... test [governing the work-product privilege] ... you may have people less willing to mediate.
Id.

It should be noted that the California statutory confidentiality provisions are worded differently from the confidentiality provisions in the Louisiana Mediation Act. In particular, La. R.S. 9:4112 A. provides:

Case 3:06-cv-00638-RET-CN    Document 7-1    10/03/06    Page 29 of 49

all oral and written communications and records made during mediation [emphasis added] ... are not subject to disclosure and may not be used as evidence in any judicial or administrative proceeding. In contrast, the California language provides:

No writing, as defined in Section 250, that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled ....

END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

18TH JUDICIAL DISTRICT COURT FOR THE PARISH OF IBERVILLE

STATE OF LOUISIANA

DIVISION " "   DOCKET NO. 47,254-D

WALTER W. ALLEN, CLEVELAND LEWIS AND SADIE LEWIS

VERSUS

ROLLINS ENVIRONMENTAL SERVICES OF LA., INC.

FILED: _____   _____

                                      DEPUTY CLERK

PETITION FOR DAMAGES

Plaintiffs petition this Honorable Court for a judgment finding defendant herein liable for damages and restoration costs associated with Defendant's deep well injection of hazardous wastes and related activities that substantially harmed plaintiffs' land and legal interests therein by allowing the migration of hazardous, toxic or harmful substances, or both, on or adjacent to plaintiffs' land, by improper and unauthorized disposal of hazardous, toxic and/or harmful substances beneath plaintiffs' land, and by leaks or spills, or both, from defendant's injection and other equipment and facilities located on or near plaintiffs' land.  Plaintiffs bring this action on behalf of themselves and all other person similarly situated.  Plaintiffs respectfully aver that:

1.

This is a class action on behalf of named plaintiffs, individually and on behalf of all Louisiana residents who own properties or reside on or use properties contaminated by defendant hazardous waste injection disposal activities within the class area located in Iberville Parish, Louisiana, near the town of Bayou Sorrell, Louisiana.  This class is also on behalf of the plaintiffs who own properties or reside in the vicinity of said pollution.

2.

Plaintiffs are:

(1)   Walter W. Allen, a Louisiana resident and/or person of full age and majority who owns a 2 1/2 acre tract of land in Township 10 South, Range 11 East, Section 28 approximately 1500' from defendant's hazardous waste injection well.

EXHIBIT 5

(2)    Sadie Lewis, a Louisiana resident of full age and maajority who resides on property in Township 10 South, Range 11 East, Section 28, Iberville Parish, Louisiana, near defendant's injection well location.

(3)    Cleveland Lewis, a Louisiana resident of full age and maajority who resides on property in Township 10 South, Range 11 East, Section 28, Iberville Parish, Louisiana, near defendant's injection well location.  Plaintiff's properties has been damaged by various defendant's disposal of toxic and hazardous wastes injected beneath or adjacent to  plaintiffs properties without landowner consent.

3.

Defendant is:

(1)    Rollins Environmental Services of Louisiana., Inc., a Delaware corporation with its principal place of business in Louisiana,

Defendant conducted, directed, and profited from the hazardous substances injection activities, more fully described herein as operator of the injection wells and other facilities, causing the pollution and related property damage attributable to its wells and facilities located on or near plaintiffs' properties.

Defendant directed and conducted the construction and operation of injection well facilities and related equipment which have damaged the environment, including plaintiffs' lands by contaminating it with hazardous and toxic substances.

4.

These materials are toxic and hazardous wastes under Louisiana and Federal law.

5.

Defendant knew these wastes they injected are highly toxic substances.

6.

Defendant knew that their day to day operations of these injection wells resulted in the migrational contamination and disposal, or both, of these chemicals beneath or in close proximity to plaintiffs' lands and underground water sources. Defendant chose to inject these wastes as a routine practice, promoting and allowing the spreading and migration of this toxic waste plume beneath plaintiffs' properties.

7.

Despite possessing such knowledge, Defendant continued its practice of disposing of said wastes on or near plaintiffs' properties, and at no time issued a warning to the public, including the plaintiffs, that the disposal discharge was migrating beneath plaintiffs' properties or that there was any hazard to persons or properties.

8.

Accordingly, as a direct and proximate result of the defendant's injections of the aforementioned toxic wastes, the class of plaintiffs have suffered damage to their real properties and interests therein.

9.

Plaintiffs seek recovery of stigma damages for the diminution in value of their interests in polluted properties or properties located in close proximity to defendant's pollution, which will continue even after complete restoration cleanup, for recovery of damages sufficient to restore the properties to their precontaminated condition, for unjust enrichment damages for defendant's unauthorized use of their properties as a toxic waste disposal site without plaintiffs' consent, for recovery of the cost to fully assess as yet unidentified pollution on plaintiffs' properties, for recovery of punitive damages for defendant's willful and wanton disregard for public safety and the environment in their transportation, handling and storage of these toxic and hazardous substances, and reasonable attorney fees.

10.

Plaintiffs and all members of the class have suffered irreparable harm and damage as a result of defendant's unlawful and wrongful conduct, and seek a mandatory and prohibitory injunction to prevent further migration of this toxic pollution.

11.

This class includes two subclasses: (1) all present owners of real properties which properties are located in Iberville Parish, Louisiana, and within a ten-mile radius of defendant's injection well site. (hereinafter referred to as Class Area 1).

12.

The individual members of the entire class and subclass are so numerous as to make joinder thereof impracticable.

13.

As to each subclass, the claims asserted arise from common questions of law and fact, to-wit:

a.    Defendant's toxic pollution of the land in the Class Area;

b.    Diminution of real and leasehold properties value among property owners and residents in the class area;

c.    Defendant's knowledge of toxic discharges and pollution of the eco-system;

d.    Defendant's concealment of such pollution and failure to warn;

e.    The reasonable value of expenses of litigation, including attorney fees, as well as punitive damages recoverable by the class members as a group.

14.

Further, because of the presence of these common questions of law and fact, a class action is the most efficient means of resolving this controversy both for the parties and the judicial system.

15.

These common questions of law and fact which exist as to the class and subclass members predominate over any questions solely affecting individual members of the class.

16.

The claims of the plaintiffs are typical of those of the class and subclass in that plaintiffs' claims arise from the same course of conduct by defendant which gives rise to the claims of other class members and the claims are based upon the same legal theories.

17.

The plaintiffs herein will fairly and adequately protect the interests of the class members and have retained counsel competent and experienced in class actions and complex litigation.

18.

Class action regarding this litigation is superior to any other method available for the fair and efficient adjudication of this controversy. The burden and expense of individual toxic tort litigation is so great as to make it impracticable for any class members individually to seek redress.

19.

Individual litigation of all claims which might be asserted by all class members would produce such a multiplicity of cases that the judicial system having jurisdiction of the claims would remain congested for years. Class treatment by contrast, provides manageable judicial treatment calculated to bring to a rapid conclusion litigation of claims arising out of Defendant's conduct.

20.

The interest of any class member who seeks individual prosecution of his or her claim is adequately protected by the opt-out procedures under Louisiana law.

21.

It is therefore in the best interest of all parties and in the best interest of judicial economy to certify this matter as a class action.

22.

Any language herein to the contrary notwithstanding, plaintiffs' asserted causes of action are based solely and exclusively upon the laws of the State of Louisiana. This petition is absolutely devoid of a claim for relief or damages pursuant to federal statutory or judicial authority.

23.

Defendant knew for many years that it was disposing, storing, discharging and other wise releasing toxic poisons and pollutants into the ground, beneath or adjacent to plaintiffs' properties in the class area, and intentionally continued to conduct these activities it knew full well were causing pollution damage and environmental despoliation to the properties of class members.

24.

Defendant was willfully and wantonly negligent in disregarding public safety while operating its Bayou Sorrel injection well, in its transportation, discharge storage, and disposal of the toxic and hazardous oil field wastes beneath or adjacent to plaintiffs' properties having known, or should have known, that these toxins would wreak damage to property and the environment.

25.

Without question, it was reasonably foreseeable that Plaintiffs and other persons similarly situated would be adversely effected and harmed by Defendant's operation of its facility and by its transportation, discharge, storage, and disposal of their toxic and hazardous wastes beneath or adjacent to Plaintiffs' lands, and that as a direct and proximate result of its negligence Plaintiffs would sustain property damage.

26.

Defendant was willfully and wantonly negligent in failing to warn Plaintiffs, and those similarly situated, of the presence of toxic substances beneath or adjacent to plaintiffs' properties in the class area.

27.

Defendant are strictly liable to Plaintiffs and those similarly situated under La. C.C. Art. 667, for storing, discharging and disposing toxic and hazardous substances via its injection wells onto, beneath or adjacent to plaintiffs' properties.

28.

The actions of the Defendant herein, in the capacity alleged above, in the operation of their injection well at Bayou Sorrell and the associated discharge, storage, and disposal of toxic substances beneath or adjacent to Plaintiffs' properties within the class area constitutes a continuing and damaging nuisance to plaintiffs and their properties interests.

29.

Defendant storage, discharge, and disposal of bioaccumulative and non-biodegradable toxic substances onto Plaintiffs' lands constitutes an ongoing and

continuous trespass, as defendant is without legal authority or right to do so.

30.

Plaintiffs are homeowners, properties owners and residents whose full use and enjoyment of their homes and properties has been, and will continue to be, directly and adversely effected by Defendant' discharge, storage, and disposal of toxic, chemical pollutants thereon or in close proximity thereto

31.

Plaintiffs have sustained damages, including, but not limited to, diminished properties values, loss of quiet use and enjoyment of their properties, and other economic, personal and aesthetic damages.

32.

As a direct and proximate result of the negligent acts and omissions of Defendant, Plaintiffs have suffered considerable damages and injuries foreseeable to Defendant, specifically:

a.   Toxic pollution of the lands, waters and properties of each Plaintiff;

b.   Destruction of the value of Plaintiffs' lands, rendering their lands unmerchantable and without substantial fair market value;

c.   Exposure of the Plaintiffs' lands, water, and properties to toxic chemical pollution, and the health hazards created thereby;

d.   Annoyance, discomfort and inconvenience occasioned by Defendant's created nuisance, including loss of full use and enjoyment of each of Plaintiffs' properties.

33.

Accordingly, Defendant is liable to Plaintiffs under La. C.C. Art. 2315 because Defendant knew or should have known that their operation of their facilities and their transportation, storage, handling and disposal of toxic substances would cause damage to plaintiffs' properties, and owed a duty to protect Plaintiffs from said harm, yet failed to take action necessary to prevent the ensuing damages.

34.

Defendant's actions, particularly its knowingly disposing of toxic and hazardous materials onto Plaintiffs' properties, allowing their effluence from off-site, and failing to warn plaintiffs of the attendant dangers, constitutes 'wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances " and therefore makes it liable to plaintiffs for punitive damages pursuant to La. C.C. Art. 2315.3.

35.

Defendant's pollution of Plaintiffs' properties by injection of hazardous and toxic substances has damaged Plaintiffs by creating potential liability attaching to Plaintiffs for this pollution and thereby potentially causing Plaintiffs to incur costs to identify and abate the damage and nuisance attributable to Defendant's acts.

36.

Plaintiffs are entitled to recover monetary damages equal in sum to the cost of conducting an expedited, comprehensive environmental assessment of all yet unidentified pollution, so as to clear title to their land; undo the stigma attached to their lands created by Defendant's negligent despoliation thereof, and undertake a thorough assessment of the harm inflicted to date so that properties can ultimately be restored to an uncontaminated, unpolluted state.

37.

Defendant has a legal duty to restore Plaintiffs' properties to its condition prior to the harm caused by Defendant and to reimburse the Plaintiffs for all response costs incurred due to Defendant's tortious conduct.

38.

The injection wells and related facilities, equipment or works owned or operated by Defendant on or near Plaintiffs' properties that have damaged Plaintiffs are things under the custody of Defendant within the meaning of La. C.C. 2317 and Defendant are thus strictly liable for these damages.

39.

Plaintiffs are entitled to be compensated with funds sufficient to:

a.   Conduct a complete scientific analysis of the nature and magnitude of the latent contamination of their properties attributable to Defendant's operations of waste pits, injection wells, and any other hazardous waste disposal implements;

b.   restore their properties to an uncontaminated state;

c.   exemplary damages; and

d.   unjust enrichment damages for defendant's unauthorized use of Plaintiffs' lands to store and dispose of its hazardous substances without prior consent or compensation to Plaintiffs from the time of trespassatory ingress up to final removal of these polluants.

WHEREFORE, Plaintiffs pray on their behalf individually, and behalf of all others similarly situated that the Defendant be cited to appear and answer this Petition and, that after due proceedings be had, that there be judgement entered herein as follows:

1.   That an order be entered herein certifying this action and maintaining this action as a class action;

2.   That the plaintiff and class members herein be awarded compensatory damages in an amount to be proven at trial, including payment of the costs to restore the land bearing identified pollution to its original, uncontaminated state, unjust enrichment damages for the unauthorized disposal of hazardous wastes on plaintiffs'; properties without their consent, and other property damages;

3.   That plaintiffs be awarded punitive damages;

4.   That Defendant pays Plaintiffs funds sufficient for conducting an expedited and comprehensive environmental assessment of plaintiffs' lands to identify all latent pollution thereon or thereunder;

5.   For all costs of this suit and for accrued legal interest on any amount awarded from the date of the judicial demand until paid, including reasonable attorney's fees;

6.   Injunction of further migration of toxic and hazardous substances beneath Plaintiffs' lands; and to abate the nuisance.

7.   For all just and equitable relief.

                    BY ATTORNEYS:

                    TALBOT, CARMOUCHE, MARCHAND,
                    & MARCELLO
                    214 W. CORNERVIEW
                    POST OFFICE BOX 759
                    GONZALES, LOUISIANA 70707-0759
                    TELEPHONE: (504) 644-7777

          BY:    _____
                    VICTOR L. MARCELLO
                    BAR ROLL NO. 9262


ASE SERVE

LINS ENVIRONMENTAL SERVICES OF LA, INC.
ough their agent for service of process
ed States Corporation Co.
 Carondelet, Suite 811
 Orleans, LA 70130


                    FILED

              ___ _ ___ PM '96

18TH JUDICIAL DISTRICT COURT
PARISH OF IBERVILLE
STATE OF LOUISIANA

DOCKET NO. 47,254                                      DIVISION: B

WALTER ALLEN, ET AL

Versus

ROLLINS ENVIRONMENTAL SERVICES, INC.

---

## SECOND SUPPLEMENTAL AND AMENDING PETITION

---

NOW INTO COURT, through undersigned counsel, come Plaintiffs, who hereby file this
*SECOND SUPPLEMENTAL AND AMENDING PETITION* by stating the following:

1.

Plaintiffs desire to amend their Original Petition and First Supplemental and Amending
Petition to add the following as party defendants:

a)   Michael A. Sullivan, a resident of Baton Rouge, Louisiana

b)   John C. Arbuthnot, a resident of Baton Rouge, Louisiana

c)   Clean Harbors (Plaquemine), L.L.C., a foreign corporation authorized to and doing
     business in the State of Louisiana

d)   Clean Harbors, Inc. ("CHI"), in its own right and pursuant to the Single Business
     Entity Doctrine, is the beneficial owner, and/or manager, and/or operator of the Clean
     Harbors Plaquemine, LLC injection well facility located in Bayou Sorrel, Louisiana,
     and is a foreign corporation organized under the laws of another state, but not
     licensed to do, and doing business, in the State of Louisiana.

e)   Clean Harbors Environmental Services, Inc. ("CHESI"), in its own right and pursuant
     to the Single Business Entity Doctrine, is the beneficial owner, and/or manager,
     and/or operator of the Clean Harbors Plaquemine, LLC injection well facility located
     in Bayou Sorrel, Louisiana, and is a foreign corporation organized under the laws of
     another state, but licensed to do and doing business in the State of Louisiana

f)   Cyril Hinds, a resident of the State of Louisiana, owned and operated of the Clean
     Land Air Water Corporation hazardous waste injection well located in Bayou Sorrel,
     Louisiana

g)   Gerald I. Hebert, a resident of the State of Louisiana, owned and operated the Clean
     Land Air Water Corporation hazardous waste injection well located in Bayou Sorrel,
     Louisiana

h)   Steadfast Insurance Company, a foreign insurance company licensed to do and doing
     business in the State of Louisiana

Case 3:06-cv-00638-RET-CN   Document 7-1   10/03/06   Page 41 of 49



**2.**

Plaintiffs desire to amend their original caption to include defendant Michael A. Sullivan, John C. Arbuthnot, Clean Harbors (Plaquemine), L.L.C., Clean Harbors, Inc. ("CHI"), Clean Harbors Environmental Services, Inc. ("CHESI"), Cyril Hinds, Gerald I. Hebert, and Steadfast Insurance Company, and to read "*Walter Allen, Cleveland Lewis and Sadie Lewis v. Rollins Environmental Services, Inc., Michael A. Sullivan, John C. Arbuthnot Clean Harbors (Plaquemine), L.L.C., Clean Harbors, Inc. ("CHI"), Clean Harbors Environmental Services, Inc. ("CHESI"), Cyril Hinds, Gerald I. Hebert, Steadfast Insurance Company*, Docket No.: 47,254, Division "B", 18th Judicial District Court, Parish of Iberville, State of Louisiana.

**3.**

Plaintiffs also desire to supplement their Original and Supplemental Petitions by adding the following paragraphs, to wit:

"40.

Michael A. Sullivan ("Sullivan") was employed at the injection well facilities from 1978 through 1980 and from 1983 through sometime in 2003 where he served as Site Superintendent, Facility Manager, and/or President of successive owners and operators of the facility.

41.

Sullivan's responsibilities included managing the operation of the facility so that it was in operated in a safe manner protective of the environment and human life.

42.

On information and belief, while employed at the injection well, and continuing through today, Sullivan has engaged in an effort to conceal the existence of several surface impoundments containing buried hazardous and toxic waste from regulators and the public on behalf of himself and the successive owners who employed him from at least 1983 until 2003. Sullivan has realized significant personal and professional gain by engaging in this concealment.

43.

In December 1993, Sullivan received a Remote Sensing Report from a consultant that demonstrated several areas of land that had been impacted by releases of hazardous and toxic wastes, but Sullivan has not produced the Report to authorities in another effort to conceal the existence of extensive pollution and environmental damage cause by the negligent operations of the injection well facility, pipeline and barge terminal.

44.

In the late 1970s and early 1980s, Sullivan participated in, and subsequently concealed evidence of, numerous unauthorized releases of significant quantities of hazardous and toxic wastes from storage tanks once located at the injection well facilities. The unauthorized releases occurred when storage tanks were overfilled from unloading tank trucks and barges. The overflowing wastes flowed onto the

Case 3:06-cv-00638-RET-CN Document 7-1 10/03/08 Page 42 of 49

ground and eventually into a ditch or trench that had been dug along side of the storage tanks, and which extended to the northwest corner of the facility into the swamps and channels of Bayou Sorrel.

45.

As a result of Sullivan's ongoing failure, actions and omissions, chemical constituents and contamination, including the isomers of hexachlorocyclohexane, are still migrating at and from this facility into ground and surface waters of the State of Louisiana, and impacting and threatening the property and lives of the Plaintiffs through contamination of a drinking water aquifer beneath their land. These are continuing and threatened actions and omissions by Sullivan.

46.

John C. Arbuthnot ("Arbuthnot") has been an environmental specialist for the Clean Harbors (Plaquemine), Inc. ("Clean Harbors") injection well facilities since September 7, 2002 responsible for investigating environmental matters at the facilities and reporting those matters to the Louisiana Department of Environmental Quality.

47.

On information and belief, Arbuthnot has engaged in an effort to conceal the true and correct history of the existence, operations and use of the former surface impoundments on the Clean Harbors property by providing to state authorities the misleading and incorrect characterization of these surface impoundments as drilling mud pits or gas well work-over pits even when he has been presented convincing evidence that the surface impoundments were actually used to store and dispose of hazardous and toxic wastes. Arbuthnot has realized significant personal and professional gain as a result of this concealment.

48.

On information and belief, Arbuthnot has also engaged in an effort to conceal the existence of significant quantities of hazardous and toxic pollutants in these surface impoundments by withholding analytical data for over three (3) years.

49.

As a result of Arbuthnot's actions and omissions, chemical constituents and contamination, including the isomers of hexachlorocyclohexane, are still migrating at and from this facility into ground and surface waters of the State of Louisiana, and impacting and threatening the property and lives of the Plaintiffs through contamination of a drinking water aquifer beneath their land. These are continuing and threatened actions and omissions by Arbuthnot.

50.

Clean Harbors Plaquemine, L.L.C. ("CHP") became owner and operator of the injection well facilities on September 7, 2002 and has since then encouraged, aided, abetted, and rewarded Sullivan and Arbuthnot in their efforts to conceal the severity and breadth of the environmental contamination released from the surface impoundments and pipeline.

51.

CHP has taken individual and additional measures to conceal the fact that hazardous and toxic substances are being released into the Plaintiffs' environment

by participating in an effort on May 27, 2004 to keep independent scientists and experts from collecting flood water samples in the vicinity of the injection well facilities.

52.

The scientists and experts were able to collect a sample on May 27, 2004 which ultimately demonstrated the presence of the chemical Toluene and the insecticide Aldrin in the flood waters that inundated many homes and property in the community of Bayou Sorrel for several weeks thereafter. These pollutants were released from the buried surface impoundments at the Clean Harbors facility and have caused the contamination of land and property belonging to the putative class members.

53.

On information and belief, CHP has required former employees to endorse confidentiality agreements prohibiting the former employees from discussing any events, including those complained of herein, that have occurred at the facility and have adversely impacted the environment of the Plaintiffs and putative class members.

54.

As a result of CHP's ongoing failure, actions and omissions, chemical constituents and contaminants, including the isomers of hexachlorocyclohexane, are still migrating at and from this facility into ground and surface waters of the State of Louisiana, and impacting and threatening the property and lives of the Plaintiffs through contamination of a drinking water aquifer beneath their land. These are continuing and threatened actions and omissions by CHP.

55.

Clean Harbors, Inc. ("CHI") is the parent corporation of its wholly-owned subsidiary, Clean Harbors Plaquemine, L.L.C. CHI has knowingly assisted CHP in its acts to encourage, aide, abet, and reward Sullivan and Arbuthnot in their efforts to conceal the severity and breadth of the environmental contamination released from the surface impoundments, tank drainage ditch, and pipeline.

56.

CHI has knowingly participated in the individual and additional measures taken by CHP to conceal the fact that hazardous and toxic substances are being released into the Plaintiff's environment by participating in an effort on May 27, 2004 to keep independent scientists and experts from collecting flood water samples in the vicinity of the injection well facilities.

57.

On information and belief, CHI, through its subsidiary CHP, has required former employees to endorse confidentiality agreements prohibiting the former employees from discussing any events, including those complained of herein, that have occurred at the facility and have adversely impacted the environment of the Plaintiffs and putative class members.

58.

As a result of CHI's ongoing failure, actions and omissions, chemical constituents and contamination, including toluene, aldrin, and the isomers of

hexachlorocyclohexane, are still migrating at and from this facility into ground and surface waters of the State of Louisiana, and impacting and threatening the property and lives of the Plaintiffs through contamination of a drinking water aquifer beneath their land. These are continuing and threatened actions and omissions by CHI.

59.

Defendants Cyril Hinds and Gerald Hebert were owners/operators of the Clean Land Air & Water Corporation ("CLAW") that owned and operated the deep well injection facility in Bayou Sorrel, Louisiana from March 1976 to July 29, 1978 when the facilities were sold to Rollins. Hazardous and toxic waste was transported to this facility via tank truck and barge.

60.

During the years of 1977 and 1978, CLAW, through Hinds and Hebert, constructed and operated several storage pits at the deep well injection facility where hazardous and toxic waste was improperly stored and/or disposed. Wastes shipped by tank truck were routinely emptied into unpermitted pits at the well site to allegedly allow suspended solids to settle out of the liquids in order to prevent structural and operational damage to the well. These illegal pits were of poor design and were constructed in a stream bed with extremely permeable and silty soils. Substantial quantities of hazardous and toxic wastes placed into these pits have ultimately been discharged into the subsurface soils and ground water where they are presently located and create an imminent and substantial endangerment to the environment.

61.

Defendants Hinds, Hebert and CLAW constructed and utilized a polyvinyl chloride ("PVC") plastic pipeline to transfer waste from a barge unloading area to the injection well located at a distance of some one and one-half (1 ½) miles away. The PVC pipeline was located in sensitive environmental areas including swamp and wetland areas. The PVC pipeline ruptured, collapsed and otherwise broke apart on numerous occasions resulting in illegal discharges of liquid waste to the surrounding soil, surface waters and ground waters resulting in extensive subsurface contamination and pollution, as well as damage to the natural resources. That contamination and pollution continues to exist and migrate at a significant depth below the land surface.

62.

Based upon records from the Louisiana Department of Natural Resources, Office of Conservation, these storage pits were partially emptied and backfilled after the sale of the CLAW injection well facilities to Rollins.

63.

Recent analyses of soil and ground water samples in the area above and around these storage pits has revealed the presence of chemical constituents from wastes placed into the pits during 1977 and 1978. These pits and their chemical constituents are contributing to the damages experienced by the Plaintiffs and class members.

64.

The Plaintiffs have conducted investigation, testing and monitoring and have discovered evidence that the chemical contamination discharged from the concealed 5 pits, a concealed storage tank drainage ditch, and along the pipeline corridor, have and threaten to impact usable groundwater in the Community of Bayou Sorrel. The

top of the Plaquemine Aquifer, a usable groundwater source, is located at one hundred (100) feet below land surface of the pits, ditch and pipeline. Soil and groundwater borings have provided evidence that the chemical contamination has been found at depths up to fifty (50) feet below the land surface. Drinking water well samples have indicated the presence of several chemical contaminants that were disposed in the pits and tank drainage ditch, as well as chemical contaminants that leaked from the barge unloading pipeline.

65.

The Plaintiffs have and own land above this same usable groundwater source, and have and own water wells completed in that source. Engineering studies have shown that the ground water flow from the contaminated areas at the injection well site are seasonally impacted by the flow of the Mound Ditch and Bayou Sorrel which flow in the direction, and on the border, of the Plaintiffs' property. The Plaintiffs are making a claim herein to recover damages for the evaluation and remediation of any contamination or pollution impacting or threatening usable ground water. As such, proper notice of this claim is being provided to the Louisiana Department of Environmental Quality and the Louisiana Department of Natural Resources pursuant to LSA-R.S. 30:2015.1.

66.

Plaintiffs also make a claim, individually and on behalf of the putative class, against Defendants CHP, CHI, Hinds and Hebert for trespass resulting from the movement of injected toxic and hazardous waste beneath property owned by the Plaintiffs and putative class members.

67.

Each day that aqueous waste is injected into the CHP injection well, the size of the waste plume, sometimes referred to as the waste front radius, increases and trespasses beneath land owned by the Plaintiffs and putative class members, in a pattern projected by these Defendants' own engineers that will ultimately reach as far as seven (7) miles to the south and southwest of the injection well.

68.

In a report prepared for former site owner, Rollins Environmental Services of Louisiana, Inc., and previously submitted into the record of this proceeding, Atwater Engineers informed Rollins that the waste plume was already located beyond the property owned by the injection well facility, and would continue to grow with continued use of the well. CHI and CHP began operating this same injection well in September 2002 and have since injected millions of gallons of hazardous and toxic waste into the waste plume, and has caused the plume to increase in size.

69.

Plaintiffs, on behalf of themselves and all others similarly situated, pray the Court order Defendants CHI, CHP, Hinds and Hebert to establish a fund to pay royalties and damages to the class for the trespass upon their land by these toxic and hazardous wastes, and for the diminution in the value and stigma now attached to their land as a result of the actions of these Defendants.

70.

At all pertinent times there were in full force and effect policies of comprehensive general liability insurance and/or environmental liability insurance

which included excess liability policies, issued by Steadfast Insurance Company, one particular policy bearing policy number: PLC 3743936 0, which company is also made defendant herein, to and in favor of the CHI and/or CHP, which policies afford coverage for liability of the nature asserted herein against the Defendants, and which policies inure, *inter alia*, to the benefit of Plaintiffs under the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:655, thereby entitling Plaintiffs to maintain this direct action against said defendant insurer, and thereby rendering said defendant insurer liable, in solido, with CHI and CHP to Plaintiffs for damages as sued for herein.

71.

Plaintiffs and the class are entitled to exemplary damages against Defendants Sullivan and Arbuthnot for their wanton and reckless disregard for the public safety in the storage, handling, transporting, and disposal of hazardous and toxic materials between 1983 and 1997.

4.

The Plaintiffs learned of these acts and omissions by these defendants less than one year ago and, therefore, this action has not prescribed.

5.

The Plaintiffs neither make any further allegations, nor take any further actions against Rollins Environmental Services of Louisiana, Inc. or its successor Safety-Kleen (Plaquemine), Inc. and agree that this matter shall remain stayed as against these entities pursuant to the Bankruptcy Court Order of June 2000.

6.

Plaintiffs re-allege and reiterate each and every allegation contained in their Original and Supplemental and Amending Petitions, against the defendants named herein, as if set forth herein *in extenso,* excluding any class action allegations.

WHEREFORE, plaintiffs pray that defendants be cited, and served, and after due proceedings are had there be judgment rendered in their favor and against all Defendants named in this and previous petitions/complaints, *in solido*, for just and reasonable compensatory damages, exemplary damages, and for such other relief as previously prayed for and as may be indicated and provided by law.

Respectfully Submitted:

DODSON & HOOKS, APLC
One Maritime Centre
17405 Perkins Road
Baton Rouge, Louisiana 70810
Telephone: 225-756-0222
Facsimile: 225-756-0025

FILED

2005 MAY 25  A 11: 16

DY CLERK - EXOFFICIAL
IBERVILLE, LOUISIANA    Page 7

By: _[signature]_

Richard J. Dodson, Bar Roll No. 4982
Kenneth H. Hooks, III, Bar Roll No. 25097

**PLEASE SERVE:**

CLEAN HARBORS (PLAQUEMINE), LLC
Through its agent for service of process
CT Corporation
8550 United Plaza Blvd
Baton Rouge, La 70809

Michael A. Sullivan
8931 Briarwood Place
Baton Rouge, Louisiana 70809

John C. Arbuthnot
17218 Sharpsburg Avenue
Baton Rouge, LA 70817

Clean Harbors (Plaquemine), L.L.C.
Through its agent for service of process
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, Louisiana 70809

Clean Harbors, Inc.
Attn: Alan McKim
1501 Washington Street
P.O. Box 859048
Braintree, MA 02185-9048
Pursuant ~ Louisiana Long Arm Statute, La. R.S. 13:3201

Clean Harbors Environmental Services, Inc.
Through its agent for service of process
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, Louisiana 70809

Cyril Hinds
820 Heart D. Farm Road
Youngsville, Louisiana 70592

Gerald I. Hebert
1103 Lee Avenue
Lafayette, Louisiana 70501

Steadfast Insurance Company
Through its agent for service of process
Louisiana Secretary of State
8549 United Plaza Blvd.
Baton Rouge, Louisiana 70809

FILED

2005 MAY 25 A II: 16

DY CLERK - 19th JUDICIAL
IBERVILLE PARISH
LOUISIANA

# HAZARDOUS WASTE FACILITY CERTIFICATE OF LIABILITY INSURANCE

1. Steadfast Insurance Company, (the "Insurer") of 1400 American Lane , Schaumburg, IL 60196 hereby certifies that it has issued liability insurance covering bodily injury and property damage Clean Harbors Plaquemine, LLC, (the "Insured"), of 32655 Gracie Lane, Plaquemine, LA 70764 in connection with the Insured's obligation to demonstrate financial responsibility under LAC 33:V.3715 or 4411. The coverage applies at LAD 000 778 514, Clean Harbors Plaquemine, LLC, 32655 Gracie Lane, Plaquemine, LA 70764for Sudden and Non-Sudden Accidental Occurrences. The limits of Liability are $5,000,000 each occurrence and $10,000,000 annual aggregate exclusive of legal defense costs. The coverage is provided under policy number PLC 3743936-02, issued on September 6, 2002. The effective date of said policy is May 1, 2002.

2. The Insurer further certifies the following with respect to the insurance described in Paragraph 1:

   a) Bankruptcy or insolvency of the insured shall not relieve the insurer of its obligations under the policy.

   b) The Insurer is liable for the payment of amounts within any deductible applicable to the policy, with a right of reimbursement by the insured for any such payment made by the Insurer. This provision does not apply with respect to that amount of any deductible for which coverage is demonstrated as specified in LAC 33:V.3715 .For 4411.

   c) Whenever requested by the administrative authority, the Insurer agrees to furnish to him a signed duplicate original of the policy and all endorsements.

   d) Cancellation of the insurance, whether by the insurer or the insured, a parent corporation providing insurance coverage for its subsidiary, or by a firm having an insurable interest in and obtaining liability insurance on behalf of the owner or operator of the hazardous waste management facility, will be effective only upon written notice and only after the expiration of 60 days after a copy of such written notice is received by the administrative authority.

   e) Any other termination of the insurance will be effective only upon written notice and only after the expiration of thirty (30) days after a copy of such written notice is received by the administrative authority.

I hereby certify that the wording of this instrument is identical to the wording specified in LAC 33:V.3719.J as such regulation was constituted on the date first above written, and that the Insurer is licensed transact the business of insurance, or eligible to provide insurance as an excess or surplus lines insurer, in one or more states, and is admitted, authorized, or eligible to conduct insurance business in the state of Louisiana.

Signature _____

Type name _____ Jayne Cunningham _____

Title _____ Regional Manager _____

Address _____ 601 W. 26th Street, 5th Fl. _____

_____ New York, NY 10001 _____


EXHIBIT
7